[No. 9256.   Department Two.   March 8, 1911.]

*In the Matter of the Estate of* GEORGE HENRY LOTZGESELL,
*Deceased.*

GEORGE LOTZGESELL *et al., as Executors etc., Appellants,*
v. HENRIETTA CYDELL, *as Executrix, etc., Respondent.*[1]

EXECUTORS AND ADMINISTRATORS — ACCOUNTING— CHARGES —DE-
FENDING SUITS.. Expenses incurred by the executors of a noninter-
vention will, who were the chief beneficiaries thereof, in defend-
ing a suit for an accounting and partition brought by parties claim-
ing part of the estate, are not properly chargeable against the
estate, as they were incurred in their own interests and not as
executors.

TAXATION—INHERITANCE TAX—EXECUTORS—ACCOUNTING.    An in-
heritance tax is properly charged to the beneficiaries.

WILLS—CONSTRUCTION—RULES—INTENT—AVOIDING INTESTACY. The
rule of *ejusdem generis,* as applied to wills, yields to the rule that
a will is to be construed to give effect to the intent of the testator,
and to avoid intestacy, and when the circumstances show that it
would defeat the intention; so that a clause in a will "and in fact
all personal property," following a bequest of live stock, farm imple-
ments, household furniture and effects, bequeathed to one of the
testator's daughters, is not to be restricted by the rule of *ejusdem
generis,* but covers $6,245.30 cash handed to the daughter the day
before his death, and not otherwise disposed of in the will, where
the intent to will all of his property appears by bequests of $50
to each of certain other children, followed by a clause that in times
past he had given them their portion of their inheritance, and the
balance of the will showed careful attention to every detail of his
parental duties and an intent not to die intestate.

WILLS—CONSTRUCTION—LEGACIES—DEBTS.    Specific bequests of
money are not to be included among "all other just debts" directed
to be paid in a certain way, but are to be paid from cash on hand
at the time of the testator's death, bequeathed under a residuary
clause.

Appeal from a judgment of the superior court for Clallam
county, Still, J., entered October 5, 1910, upon findings in
favor of the defendant, decreeing the final settlement and dis-

[1]Reported in 113 Pac. 1105.

tribution of an estate, after a hearing on the merits before the court. Modified.

*A. W. Buddress,* for appellants.

*Morris, Southard & Shipley* and *James Stewart,* for respondent.

MORRIS, J.——The questions of law involved in this appeal arise from the construction of the last will and testament of the deceased, and the decree of final settlement and distribution as made by the court below. George Henry Lotzgesell died February 16, 1907, leaving a last will and testament, duly attested by subscribing witnesses, as follows:

"I, George Henry Lotzgesell, of Dungeness, county of Clallam, state of Washington, of the age of 78 years, and being of sound and disposing mind and not under the restraint or the influence of any one whatever, do make, publish and declare this my last will and testament in the manner following: That is to say:

"First, I direct that my body be buried with proper regard to my station in life.

"Second. I direct that my funeral expenses and all other just debts shall be paid by my sons George Lotzgesell and Frank Lotzgesell and my daughter Henrietta Cydell.

"Third. I give and bequeath to my daughter Catherine Roberts, of Port Angeles, Wash., the sum of fifty ($50) dollars.

"Fourth. I give and bequeath to my daughter Anna Pilcher, of Seattle, Wash., the sum of fifty ($50) dollars.

"Fifth. I give and bequeath to my daughter Emma Hansen, of Dungeness, Wash., the sum of fifty ($50) dollars.

"Sixth. I give and bequeath to my daughter Lillie Alexander, of Matsqui, British Columbia, the sum of fifty ($50) dollars.

"Seventh. I give and bequeath to my daughter Henrietta Cydell, of Dungeness, Wash., the sum of fifty ($50) dollars.

"Eighth. I hereby appoint my beloved sons George Lotzgesell and Frank Lotzgesell and my beloved daughter Henrietta Cydell executors of my estate without bonds, and they

are hereby empowered to carry out all the provisions of this my last will and testament.

"Ninth.  After and immediately following my death, my homestead farm, consisting of one hundred and thirty-nine acres, being in the northwest quarter of section two, township thirty, range four west, together with the east half of the northeast quarter of section three, township thirty, range four west, consisting of eighty acres; also about seventy acres, more or less, in the southwest quarter of section thirty-five, township thirty-one, range four west, shall be occupied, conducted and farmed by my beloved daughter Henrietta Cydell and my son-in-law Frederick G. Cydell upon the following conditions:

"They shall provide a good and comfortable home for my son John Lotzgesell so long as he shall live and shall pay each year to my son John Lotzgesell the sum of two hundred dollars; they shall purchase for him what clothes he requires and give him, in addition, his board in a good and substantial manner.

"They shall also pay all taxes year by year on the said property and all other expenses towards its maintenance, and they shall maintain the said property and improvements in a good and substantial manner, so that its value shall not deteriorate.

"Tenth.  After the death of my son John Lotzgesell the said homestead farm and the two pieces of land adjoining, as described and specified above, shall become the sole and undisputed property of my beloved sons George Lotzgesell and Frank Lotzgesell or their heirs, to be divided into two equal pieces.

"Eleventh.  All the live stock, consisting of horses, cattle and hogs, together with all agricultural and dairy implements, household furniture and effects, and in fact all personal property, shall become the individual property of my beloved daughter Henrietta Cydell and my son-in-law Frederick G. Cydell.

"Twelfth.  I furthermore desire to state in this will that in years and times past I have at various times given to my daughters, Catherine Roberts, Anna Pilcher, Emma Hansen, and Lillie Alexander, moneys and real estate as parts and portion of their inheritance, and I now command that they shall not complain.

"Thirteenth. It is furthermore my will and request that my sons George and Frank Lotzgesell and my daughter Henrietta Cydell shall be the guardians without bonds of my son John Lotzgesell, and as such .shall, during his life, look after his every comfort and happiness.

"Lastly. I further direct that the aforesaid named executors shall deliver deeds and bills of sale without an order of the court for that purpose, but shall proceed summarily to administer upon and settle said estate as herein provided, and all without the intervention, supervision, order or decree of any court or judge, except in so far as shall be imperatively required by the laws of the state.

"In witness whereof I have hereunto set my hand and seal this fifteenth day of February, 1907.

"George Henry Lotzgesell."

The executors and executrix therein named entered upon the discharge of their duties, when differences arose as to the proper construction of the will and the allowance of claims. These differences were submitted to the court, resulting in the decree appealed from. It will only be necessary to refer to the decree in so far as its provisions are affected by the appeal.

Certain allowances were made by the court, aggregating $1,610.60, which is charged against the executors and executrix individually and in equal proportion, after giving credit in the amounts paid by each. The court rejected a claim for the allowance of $1,079.50, claimed to have been paid by the executors in defending an action brought by Anna Pilcher and Lillie Alexander, daughters of the deceased, against the other heirs, and including the parties herein, in which the plaintiffs, claiming as heirs of their mother, sought an accounting and partition as against the defendants. This action was decided adversely to the plaintiffs, the opinion and judgment of this court being found in *Pilcher v. Lotzgesell*, 57 Wash. 471, 107 Pac. 340. This order of disallowance is one of the errors suggested by the appeal, and will be hereafter referred to.

In making the allowance of the $1,610.60 item, which includes $250 bequeathed to the five daughters in the sums of $50 each, under the third, fourth, fifth, sixth, and seventh

clauses of the will, and $102.90, state inheritance tax, the
court held, as before referred to, that these charges should be
borne by George Lotzgesell, Frank Lotzgesell and Henrietta
Cydell individually, under the second clause of the will, where-
in he directed that his just debts should be paid by those three
persons as the chief beneficiaries under the will; which order is
also included in the errors assigned.  On the day previous to
his death and the same day the will was executed, the testator
handed to Henrietta Cydell the sum of $6,245.30, no specific
mention of which is made in the will, and appellants contend
that as to this money testator died intestate; while the court
found that it passed to Frederick G. Cydell and Henrietta
Cydell under the eleventh clause of the will, being included in
the words "and in fact all personal property," which ruling
is the third and last error assigned.

Referring now to the first assignment of error in the dis-
allowance of the expenses incurred in the *Pilcher* suit, we
sustain the ruling below.  The questions involved in that
action were purely ones of heirship, the defendants being called
upon to account and to partition to and with the plaintiffs
their distributive share of the property, real and personal,
alleged to have been owned by the mother.  Any expense in-
curred by appellants in that action was in their own interest
as heirs, and not as executors of the father's estate.  Such
expenses were not properly chargeable against the estate, and
were properly disallowed.  *Wilbur v. Wilbur*, 17 Wash. 683,
50 Pac. 589; *Koppenhaffer v. Isaacs*, 7 Watts 170; *Mumper's
Appeal*, 3 Watts & Serg. 441; *Scott's Estate*, 9 Watts &
Serg. 98; *Yerkes' Appeal*, 99 Pa. St. 401; *In re Titlow's
Estate*, 163 Pa. St. 35, 29 Atl. 758.  The inheritance tax,
while not a debt of the testator, was properly chargeable to
the beneficiaries.

The second and third assignments will be treated together,
as they call for a construction of the will, the main question in
this connection being whether the testator died intestate as to
the $6,245.30 cash, or did it pass to the Cydells under the

eleventh clause. A will should be construed so as to give effect to the desire and intention of the testator, in so far as it is possible to do so from the language used; and in placing a construction upon the will, the courts will avoid and prevent intestacy, if reasonably possible without doing violence to the evident intent of the instrument. In looking for this intent, not only the language used, but the entire purpose and scheme of the instrument must be given effect, and we must look, not only to the property disposed of, but to the surroundings, the persons named as devisees or legatees, their relation to the testator, and what the testator evidently had in mind in employing the language used. *In re Koch's Estate*, 8 Cal. App. 90, 96 Pac. 100.

"Again, it is well settled that, in the construction of last wills and testaments, the scope and import of the entire instrument are to be considered, for the purpose of discovering the intention of the testator, and that such intention, when discovered, is of paramount and controlling influence." *Williams v. Williams*, 18 Tenn. 20.

In looking for this intention, one of the strongest rules employed is that the testator is not to be presumed to intend to die intestate as to any part of his property, if the words of the will can be so construed as to carry the whole estate, unless the contrary intention is so plain as to force a different conclusion. *In re Reimer's Estate*, 159 Pa. St. 212, 28 Atl. 186; *Given v. Hilton*, 95 U. S. 591; *Fry v. Shipley*, 94 Tenn. 252, 29 S. W. 6.

Having in mind these general rules of construction, we come now to appellants' contention that the rule of *ejusdem generis* should be applied to the words "and in fact all personal property," as found in the eleventh clause of the will, and that as so applied, such expression covers property of the nature of the antecedent words in the same clause, and does not include money. The rule of *ejusdem generis* is primarily a rule of statutory construction, to the effect that general and unlimited terms are restrained and controlled by particu-

lar terms when used in the same connection, and as such has often been employed in the construction of wills. But even in its primary use as a rule of statutory construction, it is to be used in connection with other rules, not less important, such as the determination of the evident intent of the law-making body, and does not warrant the courts in confining the operation of a statute within narrower limits than was intended by the law makers. Black on Interpretation of Laws, 143. As applied to wills, such a rule can have no greater nor broader significance than as applied to statutes, and is to be made use of as an aid in ascertaining the meaning of the testator, and should not be employed by the courts, in limiting the meaning of language in a will within narrower limits than was the evident intention of the testator; and being a rule of intention, it must readily yield where the circumstances show that a reliance upon it would defeat, rather than effectuate, the intention of the testator. *Edmonson v. Edmonson,* 1 Tenn. Ch. 563. In speaking of the rule as applied to wills, it is said in *Williams v. Williams, supra:*

"But it has been strenuously and elaborately argued that a rule for the exposition of wills, applicable to this item, has been adopted and enforced by courts of chancery, called somewhat quaintly the rule of *ejusdem generis,* and that that rule will have the effect to limit and restrict the general words, 'everything else not otherwise disposed of' (this clause being held to be a general residuary clause) to things of the like nature and description with the antecedent particulars, whiskey, stills, accounts, notes, furniture, stock, etc. If it be intended to assert that courts of chancery have adopted and enforced a rule of artificial and arbitrary construction, or a rule of legal intention, controlling and countervailing, when necessary, the actual intention of the testator, to be gathered from the context and scope and frame of the will, then we have no hesitation in asserting that a careful examination of all the cases relied on for its establishment will demonstrate that no such rule in fact exists. The great rule in the construction of wills, to which the one of *ejusdem generis* and all others, except those founded upon public policy, are not only subordinate but ancillary, is that the intention of the testator, to be

ascertained from the particular words used, from the context, and from the general scope and purpose of the instrument, is to prevail and have effect."

The court adds later on in the opinion:

"But it were needless to cite all the cases referred to in argument; they will all be found to have turned very much upon their own particular circumstances, and they will all manifest the solicitude of the courts to attain, by the adoption or rejection of the supposed rule in question, or other rules, as circumstances might require, the purpose and intention of the testator."

The Pennsylvania court in *Reimer's Estate, supra,* adopts a similar view in saying:

"But it is useless to go over the many cases cited on each side here, for as is said in *Steele v. Thompson,* 14 S. & R. 84: 'Every case of this cast is individual; there can be no adherence to precedents, for no two wills can be exactly alike.' And as is said in *Hoge v. Hoge,* 1 S. & R. 156: 'Cases on wills have no great weight unless exactly similar in every respect. To render them authoritative, they should be *in verbis ipsissimis* and made by the testator in the same situation and circumstances.' The question is, not what might pass by the words 'personal effects,' but what did this testator intend here should pass."

Similar expressions of the courts will be found in: *Le Breton v. Cook,* 107 Cal. 410, 40 Pac. 552; *Rosenberg v. Frank,* 58 Cal. 387; *Lambert's Lessee v. Paine,* 7 U. S. 95, 130.

Following out this rule, we think from an examination of the adjudicated cases in which the application of the rule of *ejusdem generis* has been contended for in the construction of wills, it will be found that such rule has been applied or rejected as the courts have interpreted the intent of the testator from the whole instrument. What, then, was the meaning of the testator in the use of the words "and in fact all personal property," and what did he intend should pass thereunder? If we apply the rule of *ejusdem generis,* these words would not include the $6,245.30 cash, because money is not of the nature of live stock, agricultural or dairy implements,

household furniture and effects, which are the antecedent words in the same clause, and the testator would have died intestate as to this amount and the same would be for general distribution to his heirs.

We were informed on the argument of the case that the will was not drawn by a lawyer, but by a neighbor. This appeals to us as an additional reason why the words in question should be given the meaning of the ordinary layman, rather than any precise, technical, legal meaning. We assume that, since the testator made a will, he knew that if he did not do so, and if in doing so he did not devise or bequeath all his property, the same would pass to his heirs under a general distribution. It is plain, from the twelfth clause of the will, that such was not his intention, in commanding, as he does in this clause, that his four daughters therein named should not complain because they received no more than $50, for the reason that they had been the recipients of his previous bounty to the extent of their share in his property. This entire clause would be meaningless and of no effect if appellants' contention is to prevail and these heirs, after having received their share of their father's property, are now to come in and share alike as to the cash on hand with those who have not been so favored in the past but look to the will for their just share of their father's estate.

It is too plain for argument that it was the intent of the testator that these four daughters should receive no more than $50 from his estate. In order to read such intent, it is equally clear that he did not mean to die intestate as to this money. He knew of its existence. The same day the will was drawn he placed it in the possession of Mrs. Cydell. What for? As a gift *causa mortis*, or because of his understanding that she was the rightful custodian of it, since it, or the great bulk of it, was to pass to her and her husband under the terms of the will; and in wording the eleventh clause of the will, it was the expression of his intention that the Cydells were to take all his personal property of what-

ever name or nature, except the specific legacies theretofore provided for, as it was his purpose under the tenth clause to devise all his real property to his two sons.  These three children had not, like the others, received their share of his property.  He deemed it just to give all the real estate to the two sons and all the personal property to the daughter and her husband, burdened with the support and maintenance of the incompetent son John during his life, and the payment of taxes; and to the end that the son John should have a safe, sure and certain source for his future support, the Cydells are to farm the homestead and other lands described in the ninth clause, during the natural life of John, upon the express condition of providing him with proper and suitable maintenance.  To this end, in the thirteenth clause, he selects the Cydells as the guardians of the incompetent, with directions to "look after his every comfort and happiness."

This father was not unmindful of his parental duty, and every disposition of property in his will is made with due care, mindful of his obligation as a parent and the rights of his children.  With such a careful and conscientious attention to every detail, we cannot believe that he had forgotten the existence of this large sum of money, and did not intend it should play its part in the fulfillment of the scheme he intended to initiate.  We therefore believe that he had no intention to die intestate as to any of his property, whether real or personal; that he intended to dispose of his entire estate, all the real estate to the sons subject to the life estate created for John's benefit, and all the personal property, subject to the previous specific legacies, to the Cydells to aid them in properly supporting and maintaining John; and in further recognition of the daughter's right, as the only daughter not previously provided for, and in an abundance of caution, desiring nothing to be left undisposed of, he used the words "and in fact all personal property," as a residuary clause; and that thereunder the Cydells became the residuary legatees, and the $6,245.30 passed to them charged only

with the payment of the $50 bequests to the several daughters.

Counsel for appellants urge that, because in the seventh clause of the will he had given Mrs. Cydell the sum of $50, it was an expression of his intention that she was to have no more in money than that sum; and that in this respect the same reasoning that supports the argument that the four daughters named in the twelfth clause were to receive no more than $50 establishes his contention that Mrs. Cydell was to receive only $50. In so contending, appellants overlook the evident intention of the testator to put his five daughters on an equal footing. Four had already received their share of his property. He gives them in addition $50. The fifth daughter had not received her share, but is to receive it by the terms of the will, and, like her sisters, she is to receive $50 in addition to her share; and thus each of the five daughters receive an equal distribution of the estate according to the father's idea of the values of their respective gifts, it being noted in this connection that the limitation in the twelfth clause is to the four daughters therein named, and does not include Mrs. Cydell. Again, these $50 legacies are to each of the five daughters; while the provisions of the ninth and eleventh clauses of the will are not for the sole benefit of the fifth daughter, but for the use and benefit of the fifth daughter, her husband, and the incompetent son John.

One other feature requires attention. The court below included the sum of $250, the aggregate of the $50 legacies to each of the five daughters, in the $1,610.60, which he charged equally to the appellants and respondent under the second clause of the will. This, we think, was erroneous. These legacies cannot be included in the term "all other just debts," as used in the second clause. They are not a debt of the testator, but a specific bequest of money to be paid out of his personal estate; and as the testator knew he had this sum of $6,245.30 in cash at the time of his death, we

think it was his intention that these legacies to the five daughters should be paid out of such sum.

The decree is therefore modified so as to relieve appellants from any contribution to the payment of these cash legacies, and instead to charge them against the $6,245.30. In all other respects, the decree is affirmed. The cause is remanded with instructions to modify the decree as herein set forth. Respondent will recover costs.

DUNBAR, C. J., CROW, and CHADWICK, JJ., concur.