[No. 29876. Department One. July 8, 1946.]

*In the Matter of the Estate of* G. R. HAUKELI, *Deceased.* KNUTE HAUKELI *et al., Appellants,* v. PAULINE HAUKELI, *as Administratrix, Respondent.*[1]

[1]Reported in 171 P. (2d) 199.

*O. M. Nelson,* for appellants.

*Hogan & Adams,* for respondent.

MILLARD, J.—G. R. Haukeli, who was born in Norway, died intestate at the age of seventy-nine years, September 22, 1944, in Aberdeen, of which city he had been a resident for approximately fifty years. No children or descendants survived him. His heirs at law were his widow, Pauline Haukeli, who resided at Aberdeen, and four nephews and one niece, all of whom are adults. The niece and three nephews reside in Norway, and a nephew named Knute Haukeli resides in Aberdeen.

The estate, which was separate property of decedent, consisted of five parcels of real estate of the appraised value of $20,060 and certain personal property of the appraised value of $22,785.94. As there was no will, all of the personal property, subject to costs of administration, descended to the surviving widow (Rem. Rev. Stat., § 1364 [P.P.C. § 200-1]). Under the statute (Rem. Rev. Stat., § 1341 [P.P.C. § 199-1]), the widow was entitled to one half of the real estate and the nephews and niece would inherit in equal shares the other one half of the real estate.

A portion of the real estate consisted of a home at Aberdeen, described as the northerly sixty feet of lot 1, block 7, Bayview Addition. The appraised value of the home property, determined by three disinterested appraisers appointed by the court and one of whom was designated by the state inheritance tax division, was six thousand dollars. On petition of the surviving widow, an undivided one-half interest in the home property was set off to her in lieu of homestead. Rem. Rev. Stat., § 1473 [P.P.C. § 205-1] (now Rem. Supp. 1945, § 1473). The order setting apart the one-half interest to the surviving widow was entered November 22, 1944, after due notice of hearing on the petition, as required by the statute, from which order no appeal was taken.

During 1945, pursuant to orders of court and after due

notice was given as required by the statute, the administratrix sold all of the real property, except the home property described above. All of the sales were confirmed and approved by order of court. The proceeds from the sale of the four parcels of real property aggregated $15,960. The total rentals from that property prior to sale were $1,520.85. The expenses incident to sale, and upkeep of and taxes against the property, amounted to $2,057.40. That is, the net proceeds from sale of the real property were $15,423.45.

On October 4, 1945, Knute Haukeli, on his own behalf and as attorney in fact for the three other nephews and one niece of the decedent, filed petition in the superior court for Grays Harbor county for vacation of the order entered by the court November 22, 1944, setting aside to Pauline Haukeli, as the surviving spouse of the decedent, an undivided one-half interest in the home property described above. Petitioners alleged that the order of November 22, 1944, was fraudulently obtained, in that the value of the property was grossly underestimated and was fraudulently represented to the court to be of the value of six thousand dollars, when, as a matter of fact, the value of the property was in excess of ten thousand dollars. The petitioners further alleged that the granting of the order violated their constitutional rights, in that no notice was given to any one of them and that, unless the order is vacated, petitioners will be deprived of their property rights without due process of law.

The petition was filed at the time of hearing on the final account and report of the administratrix on October 4, 1945. In the final decree of distribution settling the estate, entered October 18, 1945, the court denied the petition. The decree recited that, on November 22, 1944, upon the petition of Pauline Haukeli, the surviving widow, there was set apart to her in lieu of homestead, after due notice as required by law, by order and judgment of the court, an undivided one-half interest in and to the home property described above, which order and judgment are still in full force and effect, no appeal having been taken therefrom. The court further found there was no fraud in the matter of setting aside the homestead. The petitioners appealed.

Appellants first contend that the court erred in entering the order November 22, 1944, setting aside a one-half interest in the home property to the widow in lieu of a homestead, under Rem. Rev. Stat., § 1473, and awarding the other one half of the home property to her by final decree of the court.

November 2, 1944, respondent, surviving widow of decedent, filed petition in the superior court for Grays Harbor county to have set apart to her, in lieu of homestead under the provisions of Rem. Rev. Stat., § 1473, an undivided one-half interest in and to the home property, where she resided. The appraised value of the home place fixed by the appraisers appointed by the court was six thousand dollars. Pursuant to that petition, the court ordered that hearing be had on the foregoing petition November 14, 1944, and that the clerk of the court post notices of hearing as required by the statute. The statutory notice was posted as required by law in three public places in Grays Harbor county: one on the bulletin board at the front door of the court house, one on the bulletin board at the city hall, one at another public place, all in the city of Montesano. An order was entered November 22, 1944, setting aside to the surviving widow of decedent in lieu of homestead an undivided one-half interest of the appraised value of three thousand dollars in the home property. The order recites that hearing was had November 22, 1944, on the petition, and due notice of the hearing was given as required by the statute, and no objection to petition was made by anyone.

Rem. Rev. Stat., § 1473, provides that, if it shall be made to appear to the satisfaction of the court that no homestead has been claimed in the manner provided by law, either prior or subsequent to the death of the person whose estate is being administered, the court, after hearing and upon being satisfied that the expenses of last sickness, etc., have been paid or provision made therefor, and upon petition for that purpose, shall set off to the surviving spouse property of the estate, either community or separate, not exceeding the value of three thousand dollars, which property so set off shall include the home and household goods. The

statute further provides that the award shall be made by an order of the court and shall vest the absolute title, and thereafter there shall be no further administration upon such portion of the estate so set off, but the remainder of the estate shall be settled as other estates.

"Notice of such hearing shall be given by posting notice in three public places in the county in which the hearing is to be held. . . . Said notices shall be posted at least ten days prior to the date fixed for the hearing. . . . The order or judgment of the court making the award or awards provided for in this section shall be conclusive and final, except on appeal and except for fraud." Rem. Rev. Stat., § 1473.

The proceedings in a probate court to set aside a homestead are *in rem*. The judgment setting aside the homestead is a judgment *in rem* and is conclusive against all the world of the facts adjudicated. Such judgment shall be, as the statute definitely provides, conclusive and final except on appeal and except for fraud. The fraud which will justify relief against a judgment or order of a superior court sitting in probate setting aside a homestead, must be extrinsic fraud.

Appellants appealed only from the final decree of distribution settling the estate which was entered October 18, 1945, and that appeal cannot bring to this court for review the order entered November 22, 1944, from which the time for taking an appeal expired long prior to the appeal from the final order settling the estate taken December 19, 1945. We have uniformly held, consistent with the statute (Rem. Rev. Stat., § 1473), that an order setting property over to a widow in lieu of homestead in accordance with the statute (Rem. Rev. Stat., § 1473) is conclusive and final except on appeal and except for fraud. *In re Hamilton's Estate*, 108 Wash. 326, 184 Pac. 337; *Stell Co. v. Smith*, 16 Wn. (2d) 388, 133 P. (2d) 811.

Where an order setting aside to the widow property in lieu of homestead is entered pursuant to the provisions of the statute (Rem. Rev. Stat., § 1473), after due notice and hearing, and is not appealed from, such order

is final and cannot be successfully challenged by motion to vacate it after time for appeal has expired except for fraud.

 The alleged fraud, which is a basis of the petition to set aside the order of November 22, 1944, awarding the home property to the widow, is that the value of the property was grossly underestimated and fraudulently represented to the court to be worth only six thousand dollars when its true value exceeded ten thousand dollars.

The allegation is insufficient to raise a question of fraud, as the charge pertains only to a question of the value of the property, which question inhered in the order entered by the court and could only be reviewed on appeal. There is no allegation by petitioners of fraud of such a nature as to justify equitable relief.

 When fraud is alleged as a basis for collateral attack upon a judgment or decree, it must be extrinsic or collateral to the issues tried in the proceedings which are attacked, or,

". . . as sometimes stated, there must have been fraud in procuring the original judgment or decree." *Farley v. Davis,* 10 Wn. (2d) 62, 71, 116 P. (2d) 263.

"It is settled law in this state that orders and decrees of distribution made by superior courts in probate proceedings upon due notice as provided by statute are final adjudications having the effect of judgments *in rem,* and are conclusive and binding upon all persons having any interest in the estate and upon all the world as well. . . .

" 'Extrinsic or collateral fraud,' justifying equitable relief against a judgment or decree, means some intentional act or conduct by which the prevailing party has prevented the unsuccessful party from having a fair submission of the controversy." *Farley v. Davis,* 10 Wn. (2d) 62, 70, 116 P. (2d) 263.

In *Farley v. Davis, supra,* it was contended that certain property was actually worth twice the amount for which it was sold. We held that all questions affecting the sale were matters intrinsic in the probate proceeding and were concluded by the order of confirmation and the subsequent decree of distribution unless there be an affirmative showing of fraud.

 The contention that the posting, for at least ten days

prior to the date fixed for the hearing, in three public places in the county in which the hearing is to be held, of notice of the hearing on the petition for setting aside property to the widow in lieu of homestead, did not give sufficient time to the heirs at law in Norway to appear and defend their rights, hence permits them to be deprived of property without due process of law, is without substantial merit. Notice by posting, as provided by Rem. Rev. Stat., § 1473, constitutes due notice and has the same effect as actual notice. The proceeding is one *in rem,* and notice by posting or publication may be authorized by the legislature in such cases.

As the court set apart by the order of November 22, 1944, a one-half interest in the home property to the widow in lieu of homestead and that order becoming final because no appeal was taken therefrom, the court was authorized by the statute (Rem. Rev. Stat., § 1533 [P.P.C. § 192-19]) to dispose of the remaining one-half interest in the home property other than the one-half interest set aside to the widow. The statute (Rem. Rev. Stat., § 1533) provides that, at the time of the hearing of the final report and petition for distribution of the estate, the court may partition among the persons entitled thereto the estate held in common and undivided, and designate and distribute their respective shares;

" . . . or assign the whole or any part of said estate to one or more of the persons entitled to share therein. That the person or persons to whom said estate is assigned shall pay or secure to the other parties interested in said estate their just proportion of the value thereof as determined by the court from the appraisement, or from any other evidence which the court may require. . . ." Rem. Rev. Stat., § 1533.

In the final report and petition of the administratrix for distribution is a recital that an undivided one-half interest in and to the home property set aside to the widow in lieu of homestead was appraised, by the appraisers appointed by the court, at the sum of six thousand dollars and the widow's one-half interest was therefore of the value of three thousand dollars; that, as the home property in its entirety was impossible of division, the surviving widow prayed that she be awarded the remaining one-half inter-

est in the home property, and that she be charged out of her share of the other assets of the estate sufficient to reimburse the other heirs on account of that award to her.

The court appointed three disinterested witnesses, as provided by the statute (Rem. Rev. Stat., § 1533), who appraised the home property as an entirety as of the then market value of $7,500; that is, the undivided one-half interest in the property—any question as to the award of the other one-half interest to the widow is foreclosed by the order entered November 22, 1944—which the widow sought to acquire was of the value of $3,750. Under the statute, respondent, surviving widow, would be entitled to one half, or $1,875, and appellant heirs at law would be entitled to $1,875, which the court awarded.

The administratrix employed a real estate broker to find a buyer for apartment house property of the estate, which the court authorized the administratrix to sell. The real estate agent found a buyer for the property at eight thousand dollars. The administratrix orally agreed to pay to the broker the going commission of five per cent on the sale price. The agent found a buyer for the property, and the administratrix paid to him a commission of four hundred dollars, which the court allowed as a proper item of expense of administration.

Appellants contend that an agreement authorizing a broker to sell or purchase real estate for a commission is void unless such agreement is in writing. As an alternative, appellants argue that, if the agreement be held valid, the broker's commission was an expense of administration and should have been paid out of the personal property.

The statute (Rem. Rev. Stat., § 1526 [P.P.C. § 192-5]) provides that the administratrix shall be allowed all necessary expenses in the care, management, and settlement of the estate. An executor or administrator may, at the expense of the estate, employ agents for services of administration such as in their nature require a degree of skill which is not within the command of ordinary persons. Under the circumstances of this case, the employment of the broker to find a purchaser for the apartment house was

proper. The rule governing the employment of agents for such services as in their nature require a degree of skill which is not within the command of ordinary persons, governs the employment of brokers.

"An executor or administrator may, at the expense of the estate, employ agents for extraordinary services of administration and for such services as, in their nature, require a degree of skill which is not within the command of ordinary persons. Thus, an executor may employ a broker where authority to sell is directly or indirectly given by the will or where such employment is permitted by statute. Even in the absence of testamentary or statutory authority, he may employ a broker under proper circumstances. Obviously the principles of law governing the employment of brokers or other agents apply to the employment of auctioneers. Generally, however, in all such cases the only remedy of persons thus employed is against such personal representatives individually; and such employment does not create any obligation against the estate, even though the representatives could properly have paid for the services in question out of the funds of the estate in their hands." 21 Am. Jur. 505, § 236.

We held in *Farley v. Davis*, 10 Wn. (2d) 62, 116 P. (2d) 263, that, under the statute (Rem. Rev. Stat., § 1526) which provides that an executor shall be allowed all necessary expenses in the care, management, and settlement of the estate, it was proper for an executor to employ a real estate agent to collect the rentals on the property of the estate.

It was proper for respondent administratrix to enter into an agreement authorizing a broker to find a purchaser for the apartment house property. The commission of four hundred dollars paid by her to the broker was properly allowed as an item of expense incident to the sale of the real property.

■ Appellants may not invoke the statute (Rem. Rev. Stat., § 5825 [P.P.C. § 577-3]) which declares that an agreement authorizing a broker to sell real estate for compensation or a commission shall be *void* unless such agreement be in writing and signed by the party to be charged therewith, or by some person thereunto by him lawfully authorized.

While an oral agreement for a broker's commission made by an owner of the property or by one (administratrix in case at bar) having authority to sell is within the statute of frauds (Rem. Rev. Stat., § 5825) requiring an agreement employing a broker to sell real estate to be in writing, appellants withdrew their objection to allowance of the broker's commission. Counsel for appellants stated to the court that the broker employed by the administratrix should not be paid a commission; that

" . . . a real estate man can't collect commissions unless he has it in writing when you come down to it. THE COURT: Are you insisting on that Mr. Nelson? MR. NELSON: In this case I am not insisting."

■ ■ Appellants next contend that the delinquent taxes against the Jefferson county real property, at the time of decedent's death, constituted a charge against the assets of the estate and should not have been deducted from sale price of the Jefferson county property but should have been deducted from respondent's personal property share of the estate as an indebtedness of the estate.

Appellants correctly state the rule that the indebtedness of an estate must be first paid out of the personal property belonging to the estate. The delinquent taxes against the real property in Jefferson county did not constitute an indebtedness of the estate, and no claim therefor could be filed against the estate. The owner was not personally liable for the taxes assessed against his real property; those taxes were an obligation in the nature of a lien in favor of the state and county on the land, and the statutory method of enforcing same as a lien is exclusive.

Taxes assessed against real estate are not a debt or personal liability of the owner of the property. In *Clizer v. Krauss,* 57 Wash. 26, 106 Pac. 145, we expressly held that the owner is not personally liable for taxes assessed against his real property, and that the statutory method of enforcing the same as a lien is exclusive. We said:

"There appears to be no statutory method for the enforcement of the collection of taxes upon real property other than by foreclosing the lien thereon in the manner provided by

the general revenue laws. This court has heretofore recognized the general rule that when the statute provides an ample and specific method of enforcing collection of taxes, such method is exclusive. *Pierce County v. Merrill*, 19 Wash. 175, 52 Pac. 854; 27 Am. & Eng. Ency. Law (2d ed.), 783; 1 Cooley, Taxation (3d ed.)·, 17. We think it clear that, under our system of taxation of real property, there is no personal liability against the owner for taxes charged against such property. The word 'assessments' in the contract evidently means local assessments, and it was decided in the early case of *Seattle v. Yesler*, 1 Wash. Ter. 572, that such assessments were not a personal charge against the owner of the property, even though the legislature had attempted to make them such. *Asberry v. Roanoke*, 91 Va. 562, 22 S. E. 360, 42 L. R. A. 636; Hamilton, Special Assessments, § 668."

Finally, appellants contend that the inheritance tax imposed against their share of the estate should be $771.17 instead of $1,004.50, as their share of the estate amounted to $7,711.73 and not $10,030, on which they are required to pay inheritance tax.

Under Rem. Supp. 1943, § 11202 [P.P.C. § 974-21], the niece and nephews are within the classification "class C." Any amount passing to class C up to and including the first ten thousand dollars is taxed at ten per cent. On any amount in excess of ten thousand dollars up to and including twenty-five thousand dollars, fifteen per cent.

The inheritance tax division of this state advised counsel for respondent August 29, 1945, that

" . . . we have recomputed the tax owing on the basis of the real property having a value of $5,310.00 at the time of decedent's death."

The original appraisal of the real property of the estate, listed as follows, was reduced in the amount of $690:

| | |
|---|---|
| Lots 9 and 10, Block 45 Weatherwax & Benn's Addition to Aberdeen | $7,000 |
| Home Property | 6,000 |
| Lot 4, Block 42, Weatherwax & Benn's Addition to Aberdeen | 1,250 |
| Jefferson County property | 6,000 |
| 4 vacant lots in Aberdeen | 500 |

That total of $20,750 was reduced by the recomputation of the inheritance tax division to $20,060. Under the statutes (Rem. Rev. Stat., §§ 1341 and 1364) all the personal property, subject to costs of administration, descended to respondent, the surviving widow, and she also inherited one half of the real estate. Appellants inherited in equal shares the other one half of the real estate. All of the property of the estate was subject to an inheritance tax after payment of all debts owing by the decedent at the time of his death, funeral expenses, court costs, etc. As appellants are in class C, they would be required to pay an inheritance tax of ten per cent of ten thousand dollars or a tax of one thousand dollars, and fifteen per cent on $30, or $4.50, making the total inheritance tax due on the $10,030, or one half of the value of the real property, $1,004.50.

The net proceeds from the sale of all of the real property, except the home property, amounted to $15,423.45. One half, or $7,711.73, was awarded to appellants, and the other one half was awarded to respondent widow. The inheritance tax paid by the administratrix is on the home property appraised at six thousand dollars, and there is exacted from appellants inheritance tax on one half of the six thousand dollars. This is inequitable. The appellants were awarded only one fourth of the home property. The trial court erred in approving the final report of the administratrix in the matter of her payment of the inheritance tax in the amount of $1,189.88 and in ordering that $1,004.50 of that amount be withheld from the distributive shares of appellants.

The decree is reversed, and the cause remanded with direction to the trial court to correct the error in the matter of the amount of the inheritance tax due from appellants. In all other respects the judgment is affirmed. Appellants will recover costs in this court.

BEALS, C. J., STEINERT, SIMPSON, and MALLERY, JJ., concur.