[No. 292-3. Division Three. January 31, 1972.]

HARVEY ERICKSON, as *Executor, Respondent,* v. FRED W. REINBOLD et al., *Appellants,* EMMA ALLEN LORD et al., *Respondents.*

408

*Donald A. Ericson* (of *Richter, Wimberley & Ericson*), for appellants Reinbold.

*William F. Nielsen* (of *Hamblen, Gilbert & Brooke*), for appellant Straub.

*John M. Klobucher* (of *Ennis & Klobucher*), for appellants Lord.

*Howard E. Phillips,* for respondent Erickson.

*Harvey Erickson* (of *Erickson & Worthington*), for respondent Estate of Buck.

*Edward J. Parry* (of *Trezona, Chastek, Lorenz & Parry*), for respondents Lord et al.

EVANS, J.—The material facts of this case extend over a period of approximately 70 years, commencing in the year 1900. At that time Charles and Caroline Buck, as a marital community, owned and farmed a section of land in Lincoln County. They had no children of their own, and in 1900 adopted a 3-year-old boy and named him Frank. Several years later a young man, apparently in his teens, named Samuel Lord, came to work on the farm as a hired hand. He lived in the family home and thereafter became the manager and operator of the farm.

In 1922 Charles Buck executed a will which, upon his death in 1930, was admitted to probate. By the terms of that will he left a life estate in his community half interest to his wife, Caroline, and as to the remainder provided:

## VI.

Upon the death of my wife, Caroline Buck, my interest in the property heretofore described and given to her for her use and benefit during her lifetime, both real and personal, is hereby bequeathed, given and devised unto FRANKIE BUCK, an adopted son of myself and of Caroline Buck, my wife, and to SAMUEL FREDERICK LORD, our friend, to have and to hold unto them in undivided equal parts during the lifetime of both of said parties, provided, however, that in case the said Frankie Buck should die prior to the said Samuel Frederick Lord and leaving surviving him no heirs at law, then his undivided one half (½) interest in and to all of the real and personal property hereinbefore described, is hereby bequeathed, given and devised unto the said Samuel Frederick Lord, or should, however, the said Samuel Frederick Lord die prior to the time of the death of the said Frankie Buck, our adopted son, leaving surviving him no heirs at law, then all of his right, title and interest in and to the undivided one half (½) of all of the above described property is given, bequeathed and devised unto our son Frankie Buck.

If neither left heirs at law surviving, the testator provided as follows:

## IX.

That in case, however, the said Frankie Buck, hereinbefore mentioned, and the said Samuel Frederick Lord, after having received the property under this will in accordance with the terms thereof, *should both die leaving surviving them no heirs at law,* then the property hereinbefore described, both real and personal, shall go to, be given, bequeathed and devised, one half (½) thereof to Charles Straub, a brother of Caroline Buck, my wife, and his heirs, and the other half to Louise Reinbold, sister of Charles Buck, this testator, and to her heirs, forever.

(Italics ours.)

Following the death of Charles Buck the following events took place: On September 15, 1933 Samuel Lord, while unmarried, adopted a son, Chester. On June 17, 1934 Caro-

line Buck adopted Samuel Lord, and on May 23, 1936 Samuel Lord adopted a second son, Edward. Both adopted sons of Samuel were living at the time this action was commenced.

In 1942 Caroline Buck executed her will which, upon her death in 1947, was admitted to probate. Under the terms of that will she gave, devised and bequeathed all of her property in trust to Samuel Lord, to hold for the use and benefit of Samuel Lord and Frank Buck, and further provided:

(4) . . . Upon the death of either of my said adopted sons the aforesaid real estate shall vest in the survivor of said adopted sons, provided, nevertheless, if the said Frankie Buck shall die first my entire title to said real estate shall vest absolutely in the said Samuel Frederick Lord, free of said trust, but in case said Samuel Frederick Lord shall first die then said real estate shall be held in trust by a trustee to be appointed by a court of record for the use and benefit of my said adopted son, Frankie Buck, during his lifetime in the manner herein specified.

No legatees or devisees other than Frank Buck and Samuel Lord were mentioned in Caroline Buck's will. On August 12, 1952 Samuel Lord and Emma Lord were married. On January 25, 1957 Samuel Lord died testate, bequeathing 1 dollar to each of his adopted sons, Edward and Chester, and devising and bequeathing the balance of his property "including all property or rights I may have under the wills of Charles Buck and Caroline Buck, his widow, . . . " to his wife Emma Lord, intervenor-respondent herein.

Frank Buck, a bachelor, died testate April 23, 1969. In his will he asserted ownership of an undivided three-fourths interest in the section of land involved, which he stated was then and for some years had been occupied by Carl Schultz as tenant, and with whom he had lived from time to time during his tenancy. By the terms of his will he devised and bequeathed all of his property to Carl Schultz and Emma Lord, widow of Samuel Lord, share and share alike in undivided shares.

In 1969 Harvey Erickson, as executor of the estate of Frank Buck, deceased, brought this action to quiet title to the undivided three-fourths interest in the section of farmland included in the Frank Buck estate. Named as parties claiming an adverse interest therein were the heirs of Louise Reinbold, deceased, sister of Charles Buck (herein referred to as Reinbolds), and the heirs of Charles Straub, deceased, brother of Caroline Buck (herein referred to as the Straubs). Also joined as parties claiming an adverse interest were Chester and Edward Lord, adopted sons of Samuel Lord, deceased. Emma Lord and Carl Schultz, as beneficiaries under the will of Frank Buck, intervened.

The claims of the various parties are as follows:

(1) The claim of appellants Reinbold under the Charles Buck will is to a one-half interest in the remainder which existed following termination of the life estate of Caroline Buck. They base their claim (1) upon the provisions of paragraph 9 of the Charles Buck will, contending Frank Buck and Samuel Lord both died leaving surviving them no heirs at law; or (2) if the provisions of paragraph 9 do not create an interest in them, then such interest arose out of their relationship as heirs at law of Charles Buck. In support of the latter contention they argue it was the intent of Charles Buck that, following the death of Caroline, Sam Lord and Frank Buck were to receive only life estates, and no provision having been made for a remainder over, that remainder was vested in the heirs of Charles Buck under the laws of descent. Appellants Reinbold make no claim to any interest in the property which passed under Caroline's will.

(2) The claim of appellants Straub to property devised by Charles Buck's will is the same as that of appellants Reinbold but based solely upon the provisions of paragraph 9, contending both Samuel Lord and Frank Buck died without heirs at law.

Appellants Straub also claim the entire property bequeathed and devised by Caroline Buck in her will. It is their contention paragraph (4) of the Caroline Buck will

created only life estates in Frank Buck and Samuel Lord in trust with a contingent remainder to Sam Lord, which failed. There being no devise of the remainder if Frank survived Samuel, the trust terminated on Frank's death and the interest remaining reverted to the heirs of Caroline Buck by intestate succession.

(3) Appellants Edward Lord and Chester Lord base their claim upon the contention they are remaindermen under the wills of both Charles Buck and Caroline Buck.

As to the will of Charles Buck, it is basically their contention that the intent of the testator was to create first a life estate in his wife Caroline, followed by a life estate to Frank Buck and Samuel Lord, with cross remainders between the two life tenants, and finally, a remainder to the heirs at law of Frank Buck and Sam Lord. As nephews of Frank Buck and sons of Samuel Lord, Edward Lord and Chester Lord stand as heirs at law of both life tenants, and as such are entitled to the fee title to an undivided five-sixths of the community interest of Charles Buck in the property at issue, with the remaining one-half to Emma Lord, the widow of Sam Lord.

Regarding the last will of Caroline Buck, it is the contention of appellants Edward and Chester Lord that the intention of the testatrix was to devise first a life estate to Samuel Lord, in trust for himself and for the use and benefit of his brother Frank Buck, until the death of one of the life tenants. If Frank Buck died first, fee title to the remainder was to vest absolutely in his surviving brother Samuel Lord. In the event, however, that Samuel Lord died first, the property was to pass to a court-appointed trustee to be held for the use and benefit of Frank Buck during his lifetime. This trust became vested upon the death of Samuel Lord and was terminated upon the death of Frank Buck, the entire corpus remaining untouched. Under these circumstances the trustee holds the remaining funds in a "resulting trust" for the benefit of the testator's representatives, her heirs at law determined as of the termination of

the trust. Under this theory appellants claim the entire remaining estate of Caroline Buck.

As an alternative theory, in the event the court should determine that the testator intended to convey only a life estate to the court-appointed trustee, appellants Edward and Chester Lord urge that the remainder, not having been specifically devised, reverts to the heirs of the testator, who must be determined as of a date no earlier than the vesting of the second life estate—the death of Samuel Lord. Under this theory they claim they are entitled to a one-half interest therein and the estate of Frank Buck would be entitled to the other one-half.

(4) Respondent-intervenors, Emma Lord and Carl Schultz, as named beneficiaries in the will of Frank Buck, claim in equal shares the undivided three-quarter interest included in that estate. Their claims are based upon the contention that upon termination of the life estate of Caroline Buck, Frank Buck and Samuel Lord each took an undivided one-half fee simple interest in the undivided one-half community interest devised by Charles Buck, subject only to the condition that it remain undivided during the lifetime of both. The interest taken by Frank Buck and Samuel Lord was a vested title in fee simple, subject to divestiture on the occurrence of a condition subsequent, *i.e.,* dying without heirs at law. Sam Lord died leaving as heirs at law his two adopted sons. Upon the death of Samuel Lord the divesting condition failed and his one-half interest was subject to his testamentary disposition. He disposed of it by will, naming Emma Lord his sole beneficiary (except for 1 dollar each to his adopted sons). Upon the death of Samuel, the other one-half vested in Frank Buck.

Their claim to all of the property which passed under the Caroline Buck will is based upon the contention that the estates which she left to Sam Lord and Frank Buck were, upon the death of either, to vest in the survivor, and that upon the death of Sam Lord fee simple title vested in Frank Buck, subject to a management trust during his life-

time. Respondents further contend the decrees of distribution entered confirm their claim and are res judicata.

The various claims of the parties were presented to the trial court in the form of respondents' motion for summary judgment. Following a hearing, the trial court entered two successive summary judgments. Summary judgment No. 1 quieted title to an undivided three-fourths fee simple interest in the estate of Frank Buck, deceased, and ordered the respondent-executor to inventory that three-fourths undivided interest. Following a hearing at a later date, in summary judgment No. 2 fee simple title to the remaining undivided one-fourth interest was quieted in respondent Emma Lord. The Reinbolds, Straubs and Chester and Edward Lord appeal.

■ While the facts are involved and the many conflicting legal theories advanced are complex, the basic issue presented involves a determination of the intent of Charles Buck and Caroline Buck as expressed by the terms of their wills. As was stated by the court in *In re Estate of Lidston,* 32 Wn.2d 408, 202 P.2d 259 (1949):

> The fundamental rule, in the construction of wills, is that the intention of the testator is the controlling factor; and it therefore becomes the duty of the court to ascertain, if possible, from the terms of the will itself, the true intent of the testator and give it effect, if legally permissible. [Citing cases.]

■ However, when a determination of the intent of a testator has been made by a court of competent jurisdiction, entered upon due notice as provided by law, that determination is a final and conclusive judgment, binding upon all the parties having any interest in the estate. The rule is no different when the subject matter is a decree of distribution in probate. *In re Estate of Ostlund,* 57 Wash. 359, 106 P. 1116 (1910). There the court, in discussing a decree of distribution which was alleged to be in error in determining the distributees, stated at page 364:

> Its very object and purpose is to judicially determine who takes the property left by the deceased. The only

question here to determine is, was that decree a final determination of the rights of [the distributee] in and to these lots, binding upon all persons making claim thereto as heirs of Elsie Ostlund.

The court, at page 365, also stated:

a sufficient answer to any contention which might be made upon the want of personal notice is the fact that our statute does not require any such notice, but gives the court jurisdiction of the matter of distribution upon the publication of an order to show cause "directing all persons interested to appear . . ."

And in *Manning v. Mount St. Michael's Seminary,* 78 Wn.2d 542, 548, 477 P.2d 635 (1970), the court stated:

This court has often said that orders and decrees of distribution made by superior courts in probate proceedings upon due notice as provided by statute are final adjudications having the effect of judgments in rem, and are conclusive and binding upon all persons having any interest in the estate and upon all the world as well. *Batey v. Batey,* 35 Wn.2d 791, 215 P.2d 694 (1950); *In re Estate of Haukeli,* 25 Wn.2d 328, 171 P.2d 199 (1946); *Farley v. Davis,* 10 Wn.2d 62, 116 P.2d 263, 151 A.L.R. 1302 (1941), and cases cited therein.

Also, in *In re Estate of Haukeli,* 25 Wn.2d 328, 171 P.2d 199 (1946), the court stated at page 335:

Notice by posting, as provided by [the statute] constitutes due notice and has the same effect as actual notice. The proceeding is one *in rem,* and notice by posting or publication may be authorized by the legislature in such cases.

Appellants, however, contend the decree of distribution in the estates of Charles Buck and Caroline Buck are not res judicata because they merely paraphrase terms of the wills and do not involve a construction of them. We cannot agree.

In *Tacoma Sav. & Loan Ass'n v. Nadham,* 14 Wn.2d 576, 128 P.2d 982 (1942), the court, in discussing *In re Estate of Ostlund, supra,* and other cases, said at page 594:

A decree of distribution stands upon the same footing as any other judgment rendered by a court of general juris-

diction; it constitutes in itself a construction of the will of the decedent; and even though it be erroneous in law, yet if it be rendered upon due process of law and no appeal therefrom is taken, it becomes a final and conclusive adjudication determining what property belongs to the decedent's estate, the nature thereof, and the person or persons who have acquired the title to it.

The decree of distribution in the estate of Charles Buck was entered December 3, 1930. It recites that at the hearing on the petition for decree of distribution witnesses were sworn and examined and the court heard the proof offered. The decree of distribution in the estate of Caroline Buck was entered August 5, 1948 and contains essentially the same recitation. The record reflects that both decrees were entered upon due notice as provided by law, and no appeal was taken from either decree.

As to the Charles Buck estate, language in the decree of distribution clearly reflects that *all* of Charles Buck's property, whether known or unknown, was to be distributed under the will. The decedent's one-half community interest was disposed of as follows: ". . . and the same is hereby distributed to the said Caroline Buck for the term of her natural life . . . " This constituted more than a paraphrasing of paragraph 6 of Charles Buck's will, which contained the language: " . . . for her use and benefit during her lifetime." The language in the decree being different from the language in the will constitutes a construction of paragraph 6 and a determination that the property distributed to Caroline Buck was for the term of her natural life without restriction as to its use. The court also determined in the decree that the personal property was given to Caroline Buck with the right to possession and the right to sue on any and all choses in action and to deal with the same as she may see fit, but leaving it to her discretion as to disposing of the property, simply providing that if any of said personal property be left upon her death, it shall go to the same persons and in the same proportions as the real estate "as hereinafter set forth." The court, after distribut-

ing the life estate to Caroline Buck, then distributed the real estate to Frank Buck and Samuel Lord, using the following language:

> and upon the death of the said Caroline Buck, *one-half thereof is hereby distributed to Frankie Buck and one-half thereof to Samuel Frederick Lord,* to have and to hold unto them in undivided equal parts during the lifetime of both said parties, . . .

(Italics ours.) It is to be noted the decree did not provide that distribution should be a one-half interest each to Frankie Buck and Samuel Lord at the death of Caroline Buck, but devised the entire estate to them to be held in undivided equal parts during the lifetime of both of them. In other words, each took one-half of the entire estate, but the one-halves should remain *undivided* during the lifetime of both of the devisees. The language used by the court in the decree of distribution, when compared with the language used by Charles Buck in paragraph 6 of his will, leads to the inevitable conclusion that the court made a determination of the intent of the testator by a construction of the will.

The court in its decree then provided for the divesting conditions, as follows:

> provided, however, that in case said Frankie Buck should die prior to the death of the said Samuel Frederick Lord and leave surviving him no heirs-at-law, then his undivided one-half interest in and to *said real and personal property* shall revert to and become the property of the said Samuel Frederick Lord, or if the said Samuel Frederick Lord should die prior to the death of said Frankie Buck leaving surviving him no heirs-at-law, *then all his right, title and interest in his undivided one-half shall revert to and become the property of the said Frankie Buck.*

(Italics ours.) Here again it is to be noted that the court used the language "revert to and become" the property of the survivor, whereas in paragraph 7 of Charles Buck's will it is provided:

> That in case the before mentioned property should *de-*

*scend* to the said Frankie Buck and to the said Samuel Frederick Lord, in accordance with this will, . . .

(Italics ours.)

The word "revert" is defined to mean "to turn back", "to return to", and is used in law with reference to a reversion.

> In a loose way the term "revert to" is sometimes used in a will as the equivalent of "go to," and, where the language of a will so indicates, it will be construed as used to designate the person to whom the testator wished the land to be given.

Black's Law Dictionary 1483 (4th ed. 1951).

The word "descend" is defined to mean "to pass by succession"; "to pass down from generation to generation."

> As used in wills, the word "descend" is often regarded as a general expression equivalent to the words "go to" or "belong to," and as indicating a passing of title by the force of the will rather than of the statute.

Black's Law Dictionary 530 (4th ed. 1951).

Thus it appears the court construed "bequeathed, given and devised", as used in paragraph 6 of Charles Buck's will to mean that upon the death of either Frank Buck or Samuel Lord the undivided one-half interest in the property was to go to, belong to and revert to the survivor. Again, this constitutes a determination of the intent of the testator by construction of the terms of his will and not by a simple paraphrasing of those terms.

As to the Caroline Buck estate, language in the decree of distribution follows more closely the language of her will. However, with reference to a basic issue now before this court, the probate court in 1948 did decree that Samuel Lord and Frank Buck were the sole heirs at law of Caroline Buck and, under her will, were the only distributees of her entire estate.

We, therefore, conclude (1) that the decrees of distribution in the estate of Charles Buck and Caroline Buck were a determination of the rights of the parties as to any claim based upon the contention that Frank Buck and Sam Lord received only life estates, and (2) that determination entered upon proper notice, and from which no appeal was

taken, was a final and conclusive judgment, binding upon the appellants.

In light of the above conclusion we first consider the contention of appellants Straub and Reinbold that both Charles Buck and Caroline Buck left only life estates to Samuel Lord and Frank Buck, and died intestate as to the remainder; and also the opposing contention of appellants Edward and Chester Lord that as heirs at law of Sam Lord and Frank Buck they are implied remaindermen under both wills. In doing so, we are immediately confronted with the well-established rule which is stated in 4 Page on Wills § 37.26, at 641 (Bowe-Parker 1961), as follows:

> If the duration of the estate of the first taker is not set forth clearly by the terms of the will, a gift over of what is undisposed of tends to show that the first estate was an estate for life. *Conversely, failure to make a gift over tends to show that the estate which was given to the devisee was a fee or an absolute interest.*

(Italics ours.) The only devisees named in paragraph 6 of Charles Buck's will, and paragraph (4) of the Caroline Buck will, are Frank Buck and Samuel Lord. Considering the language of paragraph 6 of the Charles Buck will, together with the language used by the court in the decree of distribution, we can only conclude that upon the death of Caroline Buck, the entire one-half interest devised by Charles Buck in his will was to be distributed in fee, one-half to Frank Buck and one-half to Samuel Lord, to be held by them in undivided equal parts during the lifetime of both said parties. Likewise, in considering the language in paragraph (4) of the Caroline Buck will, together with the language used by the court in the decree of distribution in her estate that, not only upon the death of Frank Buck the remainder was to vest absolutely in Samuel Lord in fee (not seriously disputed by the appellants), but conversely, if, as happened, Samuel Lord died first the remainder, and not merely a life estate, was to vest in Frank Buck.

As clearly indicated from the language used by the court in the decrees of distribution, both Charles Buck and Caroline Buck intended to dispose of all of their property

to Sam Lord and Frank Buck. To construe their wills as creating only life estates in Sam Lord and Frank Buck would mean they died intestate as to the remainder. There is a strong presumption that one who takes the time to write a will does not intend to die intestate. See *In re Estate of Lotzgesell*, 62 Wash. 352, 113 P. 1105 (1911). Additionally, as to the will of Caroline Buck, to hold that she died intestate as to a part of her property would be contrary to the specific language used by her in the preamble of her will, in which she recited she was disposing of all of her property.

We hold that both Charles Buck and Caroline Buck disposed of all of their property, in fee, to Sam Lord and Frank Buck, and did not merely create life estates in them.

As to the contention of Edward and Chester Lord that they are implied remaindermen following life estates in both Sam Lord and Frank Buck, in addition to what has already been said, we are unable to find anything in the will of Charles Buck to suggest that he intended to devise anything to heirs at law of either Sam Lord or Frank Buck. The words "heirs at law" as used in paragraph 9 of his will refer only to a divesting condition, the existence of which (absence of heirs at law upon the death of both Sam Lord and Frankie Buck), would result in a devise of fee title of the property to appellants Straub and Reinbold. Furthermore, the language of the decree of distribution so indicates.

As to the contention of appellants Straub and Reinbold that the adopted sons of Samuel Lord were not "heirs at law" within the meaning of that term as used in paragraph 9 of Charles Buck's will, we cannot agree. Technical words in a will are presumed to be used in their legalistic sense. *See* J. R. Steincipher, *The Adopted Child and Testamentary Class Gifts*, 1 Gonz. L. Rev. 31, 38 (1966). The term "heirs at law" is generally construed as referring to the laws of descent and distribution. *See* J. Casner, *Construction of Gifts to "Heirs" and the Like*, 53 Harv. L. Rev. 207, 209 (1939). At the time the Charles

Buck will was written, and when his death occurred, Remington's Revised Statutes § 1369 defined "heirs" as follows:

The word "heirs" shall be construed as meaning the person or persons to whom land, tenements and hereditaments descend . . .

Section 1341 provided for the descent of real property to designated heirs, including "issue" and "children." It then provided:

The words "issue," "child" and "children" wherever used in this section shall be construed to include *lawfully adopted children.*

(Italics ours.)

 Charles Buck adopted Frank Buck, and it is reasonable to presume he was therefore familiar with the legal effect of an adoption. We have no difficulty in concluding that in making the condition in paragraph 9 of his will that if Frank Buck and Sam Lord die "leaving no heirs at law" he contemplated that the term "heirs at law" included adopted children. He could have used the term "heirs of the body" or "natural children", but chose, rather, to use the broader and more-inclusive term "heirs at law." The non-existence of heirs at law was a condition subsequent. The condition subsequent having failed, they have no claim founded on the provisions of paragraph 9 to any interest in the estate of Charles Buck.

The remaining question is whether the trial court erred in determining the issues presented on respondents' motion for summary judgment.

 Where there is no genuine issue of material fact summary judgment is proper. *Tradewell Stores, Inc. v. Fidelity & Cas. Co.*, 67 Wn.2d 919, 410 P.2d 782 (1966). Material facts within the summary judgment rule are those upon which the outcome of litigation depends. *Zedrick v. Kosenski*, 62 Wn.2d 50, 380 P.2d 870 (1963).

CR 56 relating to summary judgments provides:

(c) . . . The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on

file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. . . .

. . .

(e) . . . . Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

■ The basic issues presented required consideration by the trial court of (1) the intent of the testator Charles Buck and the testatrix Caroline Buck, as determined by the probate court in the decrees of distribution previously entered, and (2) the intent of the testator and testatrix, as expressed within the four corners of the wills as to those matters not determined by the court in the decrees of distribution. These are questions of law to be determined by the trial court.

Affidavits in opposition to the motion for summary judgment were presented by appellants. They contend these affidavits create an issue of fact to be determined in a full trial. A consideration of the affidavits leads this court to the conclusion that they do not go to the basic issues presented, and do not meet the requirements of CR 56 in that they either are not made on personal knowledge, do not set forth such facts as would be admissible in evidence, or do not show affirmatively that affiant is competent to testify to matters stated therein.

We conclude the affidavits submitted by appellants do not create a genuine issue of material fact upon which the court should require a trial. *See Martin v. Shaen,* 26 Wn.2d 346, 173 P.2d 968 (1946); *Luther v. National Bank of Commerce,* 2 Wn.2d 470, 98 P.2d 667 (1940).

Judgment affirmed.

MUNSON, C.J., and GREEN, J., concur.

Petition for rehearing denied March 13, 1972.