[1] Reported in 202 P.2d 259.
The executor of a decedent's will, and the state of Washington, acting through the inheritance tax and escheat division of the state tax commission, have each appealed from the final decree of distribution entered by the superior court for King county, sitting in probate. The question presented to us in both appeals involves the interpretation of the residuary clause of the will. The facts in the case are not in dispute.
Charles Lidston, who will hereinafter at times be referred to as the decedent or as testator, was a bachelor residing in Seattle, Washington. On April 12, 1945, he executed an instrument, denominated his last will and testament, which he himself had previously drawn. The will consists of three paragraphs. The first paragraph provided for the testator's burial, specifying that the funeral expenses should not exceed three hundred fifty dollars. By the provisions *Page 411 
of the second paragraph, Robert P. Cunningham, of Seattle, was appointed executor, to serve without bond and without the intervention of any court, with power to grant, bargain, sell, convey, or exchange the whole or any part of the testator's estate. The third paragraph reads:
"Third: I direct my Executor to sell the following real estate [lot in Seattle]. I also direct my Executor to dispose of contents of dwelling, with the Exception of any part belonging to my niece Esther J. Lidston, and at the discretion of my Executor to give to my nieces Esther J. Lidston and Phyllis Ann Cunningham any part thereof, selling the remainder. Also I direct my Executor to dispose of any bonds at the best market prices, and with the proceeds from the sale of property and bonds, and with any other money in my estate, after all just debts are paid, to make the following disposition of same as far as possible while funds permit in the following order to wit. No reduction to be made on those first mentioned, in order to distribute to the remainder.

First: Five thousand and No/100 Dollars ($5,000.00) to be
 placed in a trust fund on behalf of my niece Esther J.
 Lidston, and a monthly allowance of not to exceed Thirty
 dollars ($30.00) per month, and in the event of her
 death, any balance to be equally divided between her two
 sisters Phyllis Ann Cunningham, and Elsie Schaumburg.
Second: To my niece Mrs Phyllis Ann Cunningham One thousand
 dollars.
Third: To my sister Mrs Annie Petty of Cheshunt, England, One
 thousand dollars.
Fourth: To my grand nephew Robert Murray Cunningham, One
 thousand dollars.
Fifth: To my nephew Philip Lidston of London, England, One
 thousand dollars.
Sixth: To my sister Mary Coyle of London England, one thousand
 dollars.
Seventh: To my niece Winifred Bacon of Surrey England One
 thousand dollars.
Eighth: To my brother Walter B. Lidston of London England, One
 thousand dollars.
I further direct my Executor dispose of any balance after theaforementioned gifts have been paid according to his wisediscretion." (Italics ours.) *Page 412 
The executor, Robert P. Cunningham, is the husband of Phyllis Ann Cunningham, who is a niece of the decedent Charles Lidston and one of the legatees named in his will. Mr. Cunningham had been intimately acquainted with the decedent for about forty years immediately prior to the latter's death, and for a considerable period of time the two men had been employed in the same insurance office. They visited each other frequently, their homes being only about a block and a half apart. The decedent talked confidentially with Cunningham many times concerning the things he wished to have done, with respect to his property, after his death. His particular concern was for his niece Esther Lidston, who is now approximately forty-eight years of age and apparently in good physical health, but who, unfortunately, is intellectually undeveloped, her mentality approximating that of a twelve-year-old child.
It appears that Esther Lidston had lived in decedent's home nearly all of her life. Her father had also lived there before his death, which occurred about three years prior to the death of Charles Lidston, the testator. Esther Lidston's only close relatives are her two sisters, Phyllis Ann Cunningham and Elsie Schaumburg, the latter of whom resides in Chicago, Illinois. Mrs. Schaumburg is well off financially, and for that reason, apparently, the decedent did not bequeath her any specific legacy.
In his conversations with Mr. Cunningham, decedent stated that he had made provision for Esther in his will and requested Cunningham to carry such provision into effect, which Cunningham agreed to do.
Charles Lidston died October 12, 1946, without wife or child, and shortly thereafter his will was admitted to probate. In due course, the executor filed his final account and petition for distribution. In his petition, the executor stated that he interpreted the provisions of the residuary clause of the will to mean
". . . that the language mentioned is a valid gift and disposal of the residue of the decedent's estate to Robert P. Cunningham, executor to be paid out according to the discretion of the said executor." *Page 413 
Immediately following this pronouncement of his interpretation appears the statement by the executor in his petition
". . . that the said Robert P. Cunningham intends to exercise his discretion as provided in said will by dividing the residue of this estate into 3 equal portions: One to go to Phyllis Ann Cunningham, one to Esther J. Lidston and one to Elsie Schaumburg."
The reason assigned by the executor for his intention so to exercise his discretion was that if it should ever become necessary to make provision for the care of Esther Lidston beyond the means provided for her in the will, that would probably have to be done by her two sisters, Phyllis Ann Cunningham and Elsie Schaumburg.
The executor further stated in his petition that he also interpreted the will to mean that the eight specific bequests above mentioned should be free of inheritance tax, and that such tax on those items should be paid out of the residuary estate.
In the prayer of his petition, the executor asked that his interpretation of the will be approved by the court, and that the estate be distributed accordingly.
The state filed its appearance in the case, contending that, under the executor's interpretation of the will, a considerable portion of the estate would pass to Mr. Cunningham as a "class C beneficiary," and the state would thus be entitled to a larger amount of inheritance tax than it would receive under a tentative interpretation made by the trial court at a previous partial hearing. In view, also, of the trial court's tentative interpretation, a guardian ad litem was appointed for two minors who were not named in the will but who would be entitled to a portion of the residuary estate, if the trial court should adhere to its original opinion. The guardian ad litem appeared and filed his objections to distribution of the estate in the manner prayed for by the executor.
After a hearing on the matter, the trial court entered its final decree of distribution, wherein it found and held (1) that the language used by the testator in his will constituted *Page 414 
a full and complete testamentary disposition of that portion of the decedent's estate comprehended in the eight bequests therein set forth; (2) that all inheritance taxes should be paid out of the residuary estate; but (3) that the residuary clause of the will was not a legal testamentary devise or bequest, that its language was indefinite, and that, for these reasons, the decedent should be regarded as having died intestate as to that portion of his estate.
The executor and the state of Washington have appealed.
The question presented by the two appeals is whether the language of the residuary clause of the will, as hereinabove set forth, is sufficient to constitute a valid testamentary disposition of the residuary estate, or whether, on the contrary, because of the insufficiency of the language for that purpose, this court must now hold that the decedent died intestate as to that portion of his estate.
[1] A will, as defined by Blackstone and other authorities, is the legal declaration of a man's intentions, which he wills to be performed after his death, and all definitions of the term embody the idea that it is a means of disposing of one's property, to take effect after the death of the testator.
[2] The fundamental rule, in the construction of wills, is that the intention of the testator is the controlling factor; and it therefore becomes the duty of the court to ascertain, if possible, from the terms of the will itself, the true intent of the testator and give it effect, if legally permissible. In rePhillips Estate, 193 Wn. 194, 74 P.2d 1015; In reElliott's Estate, 22 Wn.2d 334, 156 P.2d 427, 157 A.L.R. 1335; In re Hamilton's Estate, 26 Wn.2d 363,174 P.2d 301; Horton v. Board of Education of the Methodist ProtestantChurch, ante p. 99, 201 P.2d 163; Rem. Rev. Stat., § 1415 [P.P.C. § 219-39].
The predominance of this rule above all others, in the construction of wills, has been repeatedly emphasized by the courts in various expressions, as found in the following excerpt taken from 57 Am. Jur. 731, Wills, § 1135: *Page 415 
"All rules of construction are designed to ascertain and give effect to the intention of the testator, for the very purpose of the construction of a will is to ascertain such intention. Accordingly, while the courts are bound to have regard to any rules of construction which have been established, it is to be remembered that rules and presumptions relating to the construction of wills are subordinate to the intention of the testator where that has been ascertained or is ascertainable, and must yield thereto, however crudely or artificially the will may be drawn. Rules of construction have their legitimate function when they are needed to understand the purpose intended to be embodied in the language used in the will. They take hold only where uncertainty commences and let go where it ends, and cannot control or vary the intent or properly prevent its execution. The one rule of testamentary construction to which all others are servient and assistant, it has been said, is that the meaning intended by the testator is to be ascertained and given effect in so far as legally possible. The testatorial intention will control any arbitrary rule, however ancient may be its origin, and the various accepted canons of construction serve not so much to restrict or constrain the judicial mind as merely to aid or guide it in the discovery of the intention of the testator."
[3] In connection with the procedure relating to the interpretation of wills, certain legal principles have been educed and enunciated by the courts in the form of presumptions, which are now commonly accepted and regarded as substantive rules of testamentary construction. Prominent among these principles, and considered as an aid to assist and guide the judicial mind in discovering the intention of the maker of a will, is the presumption that the testator intended to dispose of his entire estate, or, stated negatively, it is not to be presumed that the testator intended to die intestate as to any portion of his property, unless the contrary intention is so plain as to compel a different conclusion. In re Lotzgesell's Estate, 62 Wn. 352,113 P. 1105; In re Searl's Estate, 29 Wn.2d 230,186 P.2d 935; In re Hayes' Will, 263 N.Y. 219, 188 N.E. 716; 69 C.J. 91, Wills, § 1147; 57 Am. Jur. 754, Wills, § 1158.
[4] Another legal principle, enunciated and accepted by the courts as a substantive rule of testamentary disposition, *Page 416 
is that, where the same words occur in different parts of a will and relate to the same subject matter, it will be presumed that they are used in the same sense wherever found in the will, unless the context discloses a contrary or different intention.Roskrow v. Jewell, 154 Iowa 634, 135 N.W. 3, Ann. Cas. 1914B, 63; Fowler v. Whelan, 83 N.H. 453, 144 A. 63, 75 A.L.R. 752;Stewart v. Stewart, 61 N.J. Eq. 25, 47 A. 633; 69 C.J. 84, Wills, § 1142; 57 Am. Jur. 750, Wills, § 1152.
[5] One other kindred principle or rule, to which reference should here be made, is that no particular words or conventional forms of expression are necessary in order to enable one to make an effective testamentary disposition of his property; and if the testator's intention can be ascertained to a reasonable certainty from the entire language of his will, such intention will be given effect, even though the language used by the testator be informal or inartificial and fails to employ apt legal words in designating a bequest or devise. 57 Am. Jur. 745, Wills, § 1147; 69 C.J. 71, Wills, § 1126.
[6] Reading the instrument here under consideration in its entirety, particularly in the light of the rules and principles above set forth, we have no hesitancy in holding that Charles Lidston executed it as his will, intending thereby to make testamentary disposition of all of his property. The instrument is headed "Last Will and Testament." The testator, who drew the instrument with his own hand, referred to himself as being of "disposing mind" and thereupon declared the document to be his last will. Provision was made for his funeral services and for the payment of all just debts and costs of administration. Then, eight specific bequests were made, concerning the legality and validity of which no question is here raised. Finally, in language that is explicit, clear, and free from ambiguity, although expressed by a layman, the executor is directed todispose of any balance, after the aforementioned gifts have been paid, according to his wise discretion. *Page 417 
 [7] It will be observed that throughout the third paragraph of the will the word "direct" is used, not only in the sense of conferring power and imposing duties upon the executor, to be exercised and performed during the course of his administration, but also in a dispositive sense, indicating how and to whom the corpus or substance of the testator's estate shall finally be distributed. Although there are, in the will, no such conventional, technical, or legal terms as "give, devise, and bequeath," to indicate the disposition of the testator's property, there is a positive direction to the executor to dispose of the estate in a manner specifically declared in the will.
It will also be noted that the words "dispose of" are used three times in the third paragraph of the decedent's will. In the first two instances of their use, they clearly had reference to something to be done by the executor in the course of his administration of the estate, namely, to dispose of the contents of the dwelling, likewise the bonds owned by the testator, apparently with the view of reducing the assets of the estate to liquid form. The third instance of the use of these words, appearing in the residuary clause, had reference to the distribution of the estate at the conclusion of the administration.
It is plain, we think, that the words "dispose of" as they appear in the residuary clause, are referable to, and are used in the same sense as, the words "make . . . disposition" appearing in that portion of the will which provides for the eight specific bequests. In short, it is manifest that the testator's intention was (1) to provide for the payment of all just debts and necessary expenses; (2) to provide for the eight specific bequests described above; and (3) to authorize and direct the executor to dispose of the balance of his property in any manner that his wise discretion should dictate.
Had the testator intended to leave any portion of his estate to relatives other than those mentioned, he undoubtedly would have so indicated in his will; had he intended to leave to any of the eight named legatees any greater amount than he did, either specifically or by naming him or *Page 418 
her as a residuary legatee, he likewise would undoubtedly have so provided; and had he desired to leave, in any manner, a greater amount in trust for the benefit of Esther J. Lidston, on account of her mental infirmity, he also undoubtedly would have expressed that desire by definite affirmation. But he did none of these things; on the contrary, he put the residuum of his estate at the absolute disposal of the executor, according to the latter's "wise discretion." As indicated above, it is conceded by all that the words "make disposition" constituted a testamentary disposition, so far as the eight specific bequests are concerned. We are satisfied that the words "dispose of" in the residuary clause, considered in their context, are of the same import and likewise constitute a testamentary disposition.
Our interpretation of the testator's intention is further borne out by the evidence in the case, referred to above, showing the circumstances under which the testator made his will.
[8] In determining the meaning to be given to the language used in a will, extrinsic evidence of the surrounding facts and circumstances may be considered by the court, not for the purpose of proving intention as an independent fact, or of importing into the will an intention not expressed therein, but rather as an aid to a right understanding of the language used and for the purpose of enabling the court to discern what the testator meant by such language. Cotton v. Bank of California, 145 Wn. 503,261 P. 104; In re Harper's Estate, 168 Wn. 98, 10 P.2d 991,15 P.2d 1119; In re Bauer's Estate, 5 Wn.2d 165,105 P.2d 11; 57 Am. Jur. 681, Wills, § 1049; 69 C.J. 136, Wills, § 1174.
Having determined the true intent of the testator with respect to his will, including the residuary clause thereof, we next consider the question whether the testator legally achieved the accomplishment of his intention by the language employed in the residuary clause.
It is contended by the appellant executor and by the appellant state that the direction in the will that the executor thereof "dispose of any balance after the aforementioned gifts have been paid according to his wise discretion" creates *Page 419 
a valid and enforcible general power of appointment in the executor to dispose of the residuary estate in any manner that he might see fit. The contention of the respondent, on the other hand, is that such language shows that the intention of the testator was to set up a trust, with the executor as trustee, and that the trust must fail for the reason that the beneficiaries thereof are not definitely ascertainable.
[9] A power of appointment, which may be created by deed or by will, is defined, generally, as a power or authority given to a person to dispose of property, or an interest therein, which is vested in a person other than the donee of the power. For other definitions of the term, see 3 Restatement of Property (1940), parts 3 4, 1818, § 318; 3 Page, Wills (Lifetime ed.), 841, § 1311; 3 Walsh, Commentaries on Law of Real Property, 262, § 320; 41 Am. Jur. 806, Powers, § 2; 49 C.J. 1248, Powers, § 1; 33 Words Phrases (Perm. ed.) 158, and Cumulative Annual Pocket Part, p. 19.
Mr. George W. Thompson, in his work on the Law of Wills (3d ed.) 596, § 400, defines, describes, and explains the power of appointment as follows:
"A power of appointment is a power of disposition given to a person over property not his own, by some one who directs the mode in which that power shall be exercised by a particular instrument. It is an authority to do an act which the owner granting the power might himself lawfully perform.
"It is not a property right but a personal privilege, a deputation of the donee to act for the donor in disposing of the latter's property. It is not an absolute property, nor an estate, but authority to appoint an estate; in other words, to indicate to whom the estate shall pass. The donee of the power may have a limited estate of his own in the property, such, for instance, a life estate. In such case the power is distinct from the limited estate, and its exercise is necessary in order to dispose of the inheritance. . . .
"In determining the testator's intention respecting a grant of power to dispose of property, all the terms of the will, including those indicating a limited power, as well as those indicating an absolute and unlimited power, of disposition, should be considered, and such intention must be ascertained *Page 420 
from the language used in the will, the object to be accomplished, and the surrounding circumstances."
[10] A clear distinction exists between a "power" and a "trust," as conferred upon one by the will of another. A power is, generally, not imperative, but is to be exercised at the will or discretion of the one to whom the power is given, whereas a trust is generally mandatory and obligatory upon the conscience of the person entrusted. In other words, the donee of a power is empowered to act, but is not necessarily required to do so, while a trustee is not merely empowered, but is required, to act in accordance with the will of the testator.
[11] Powers of appointment may be general or special, and the distinction between them is likewise important. A power of appointment is general if it is capable of being exercised by the donee in favor of anyone, including himself, without restriction as to the estate or interest appointed. It is special, or limited, if its exercise is restricted to particular persons, or a particular class of persons, or if it can be exercised for only certain named purposes or under certain conditions. Thompson, Wills (3d ed.) 586, § 392; 3 Walsh, Commentaries on Law of Real Property, 268, § 321; 3 Page, Wills (Lifetime ed.), 844, § 1312; 41 Am. Jur. 808, Powers, § 4; 49 C.J. 1250, Powers, § 6.
[12] No technical, special, or particular form of words is necessary for the creation of a power of appointment; if the testator's intention to confer the power appears from the entire will, full effect will be given to such intention. In Thompson, Wills, 588, § 394, the rule as supported by the authorities is stated as follows:
"No particular form of words is necessary for the creation of a power; any expression, however informal, being sufficient if it clearly indicates an intention to give a power. All that is necessary is an indication of a clear intention to accomplish some proper purpose by the donor through the donee. It may be conferred by express words, or may be necessarily implied. The extent and manner of the execution of a testamentary power is determinable solely on the principles of the law of agency." *Page 421 
Similiar expressions will be found in 3 Page, Wills (Lifetime ed.), 846, § 1313; 3 Walsh, Commentaries on Law of Real Property, 281, § 324; 41 Am. Jur. 810, Powers, § 6; 49 C.J. 1253, Powers, § 14.
[13] In the light of the rules set forth in the foregoing authorities, it is manifest to us, and seemingly indisputable, that, when the testator herein used the language appearing in the residuary clause, he had no thought or intention of creating a trust, for there is no indication as to who the beneficiaries are to be or as to the purpose to be accomplished; on the contrary, that language, in its context, is consistent only with an intention to create, and an express creation of, a general power of appointment, authorizing and empowering the executor to dispose of any balance remaining in the estate, according to the executor's wise discretion. It seems to us that as a layman the testator could hardly have used more appropriate language to express his intention to confer upon his executor the power to dispose of the residuum of the estate in a manner determinable by him.
We are cognizant of the fact, as pointed out by the respondent, that to construe the residuary clause as conferring a general power of appointment, would in effect amount to a gift of the residuary estate to the executor. We may concede that this would be the logical result of such construction of the will. However, that was a hazard, if it may be called such, that the testator took when he drew his will in that form. Moreover, there is nothing in the language of the will, nor in the circumstances surrounding its preparation and execution, to indicate that the testator did not wish that very result to obtain. On the contrary, the phraseology of the will indicates that he wanted the balance of his estate distributed as the executor in his discretion should decide, regardless of who might be the recipient beneficiaries thereof.
[14] As stated in 3 Restatement of Property (1940), parts 3 
4, 1843, § 324: *Page 422 
"The scope of the donee's discretion as to appointees and the time and manner of appointment is unlimited except as the donor effectively manifests an intent to impose limits."
In a probate proceeding entitled In re Will of Tinsley,187 Iowa 23, 174 N.W. 4, 11 A.L.R. 826, the will involved provided:
"In case of any serious accident, after my just debts are paid, I direct that my aunt Miss Mary E. Clark, take entire charge of my estate for disposal as she sees fit."
The will was delivered to and retained by Mary E. Clark, the person named therein, until her death, when it passed into the hands of the sole beneficiary of her will, Olive M. Clark. Thereafter Tinsley died, leaving neither wife nor lineal descendants. His will was thereupon presented for probate by Olive M. Clark. The controversy in the case was between Olive M. Clark and the heirs at law of the testator Tinsley.
Holding that the instrument was testamentary in character and entitled to be admitted to probate, the Iowa court said:
"Any writing by which a person undertakes to make disposition of his property or estate, to take effect after his death, is testamentary in character; and, if duly signed, witnessed, and published, it is entitled to admission to probate. It makes little difference whether the language employed be that of a lawyer, skilled in all technicalities of the law of wills, or is prepared by the most ignorant and unpracticed scrivener, if, when candidly read and fairly construed, it reveals the purpose of the testator to make a disposition of his estate, or some part of it, which shall become effective and irrevocable at his death. It is not necessary that there shall be express technical words of devise or bequest, or an express declaration that its provisions shall take effect only at his death, if, when read as a whole, in the light of the circumstances under which the instrument was made, such is the reasonable meaning to be extracted from its terms. A very large proportion of wills presented to the courts for probate is of very informal character, and not a few have been prepared by the testators themselves. If held to any rigid test of form, very many of them would be held hopelessly bad; but the courts everywhere very properly feel bound to look to the substance, and, if the intent *Page 423 
of testators be ascertainable, to give their wills effect accordingly.
"There is no fair method of reading into the will in this case a purpose to give Mary E. Clark a mere naked power to sell the property for the benefit of the deceased or of his estate, or of any other person or persons named or unnamed. She is given possession or charge of his entire estate, for her disposal as she may see fit. There is no direction, intimation, or suggestion, that she is to account therefor to any other person, or that any other person shall have any right or interest in the property or in the proceeds of its sale. . . .
"If the sole evidence of a transaction between A and B is that A delivers to B a sum of money or other item of personalty, saying to him, `Here, take this and manage and dispose of it as you please,' no lawyer will contend that this alone establishes the creation of a trust. On the contrary, he would say that this fact, without other evidence to modify its effect, establishes a valid gift, for which the receiver is under no obligation, at law or in equity, to account to the giver or to his representatives. If such would be the ruling as to an alleged gift inter vivos, why should we hold that a testamentary gift, in substantially the same words, is ineffective?
"In Rona v. Meier, 47 Iowa, 607, this court said:
"`It is fully settled by authority that, if the first taker has the power, by the terms of the will, to dispose of the property, he must be considered the absolute owner.'"
In Harvey v. Griggs, 12 Del. Ch. 232, 111 A. 437, the residuary clause read:
"All the rest, residue and remainder of my estate, both real, personal or mixed, of which I shall be possessed or to which I may be entitled at the time of my decease, I direct my executor hereinafter named, and my sister Mrs. Elizabeth H. Gause to divide and distribute according to their best judgment."
The heirs at law contended that the residuary clause created a trust void for uncertainty, because beneficiaries were not named. Holding that the whole of the residuary estate belonged to the parties designated in the residuary clause, the Delaware court of chancery said:
"A direction to divide and distribute an estate does not create a trust, if there be no indication at all as to who the *Page 424 
beneficiaries are to be, or as to the purpose to be accomplished.
"This is certainly true where there is a direction to divide and distribute an estate according to the judgment of the persons to whom the direction is given. The word `trust' is not used. Neither are there words implying a request, recommendation, confidence or hope that the two persons named will apply the property for some specified object, person, or persons, or class of objects or persons, or any other language showing definitely, or by reasonable inference, that the estate was to be used for the benefit of any person other than the two individuals named in the residuary clause. No trust is created unless some beneficial interest is stated, or some object or purpose be designated. . ..
"There being, then, no trust, the residue is given absolutely to the person who was named as executor and to Elizabeth H. Gause. They were given an unqualified power to dispose of the property constituting the residuary estate and the conferring of such power is an absolute gift."
Another case illustrating the principle here involved is that of In re Watts's Estate, 202 Pa. 85, 51 A. 588. In that case, the will made provision for an adopted daughter of the testatrix and concluded with a residuary clause, reading:
"I also desire the remainder of my estate to be disposed of in accordance with the judgment and advice of my executor William Still."
The auditor, under Pennsylvania practice, found that this provision resulted in intestacy as to the remainder of the estate and awarded such remainder to a brother of the testatrix. This finding was affirmed by the orphans' court. The supreme court reversed the decree of the lower court, saying:
"It was not the intention by this clause to create a trust, or to give the executor a power to sell merely, and we see nothing in it but an unlimited and purely arbitrary power of disposition. Without writing in or taking out a word, full effect is given to the clause by regarding it as the substitution of the judgment of the executor for that of the testatrix in the disposal of the estate. The testatrix had an undoubted right to give her estate to such persons as her executor might select. She could have given it to him for *Page 425 
life and at his death to such persons as he might appoint. The power is no less valid because not preceded by an estate to him. If she had said, `I give my estate to such persons as my executor shall appoint,' or `I give to my executor full power to dispose of my estate in accordance with his discretion,' there could be no doubt that a general power of appointment was conferred on the executor. This is in effect what she said in directing the remainder `to be disposed of in accordance with the judgment and advice of my executor.' Too close adherence is not to be had to the precise literal meaning of the words of a will, and a construction is to be given which will make it effective rather than destroy it."
Other cases in line with those heretofore cited and supporting the principles hereinbefore set forth are the following: Gilmanv. Gilman, 99 Conn. 598, 122 A. 386; Rona v. Meier, 47 Iowa 607, 29 Am. Rep. 493; Law v. Douglas, 107 Iowa 606,78 N.W. 212; Benz v. Fabian, 54 N.J. Eq. 615, 35 A. 760; Manson v.Jack, 62 Atl. (N.J. Ch.) 394; Hill v. Fiske,69 Misc. Rep. 507, 125 N.Y. Supp. 1026; In re Megrue's Estate,135 Misc. Rep. 16, 237 N.Y. Supp. 523; Ralston v. Telfair, 17 N.C. 255;Beck's Appeal, 116 Pa. 547, 9 A. 942; Cheney v. Plumb,79 Wis. 602, 48 N.W. 668.
The respondent concedes that the general rule with respect to a general power of appointment is as we have above stated it. He contends, however, that, by the residuary clause in the instant case, the testator intended that the executor should hold the remainder of the estate as trustee for the benefit of such persons or objects as the executor should select; but that, since the testator failed to make the beneficiaries sufficiently certain to create a valid trust, he must be held to have died intestate as to his residuary estate. In support of this contention, respondent relies wholly upon the case of In reLong's Estate, 190 Wn. 196, 67 P.2d 331.
In that case, the testatrix, after making certain recitals in her will, bequeathed and devised to her executor, named therein, one half of her estate, and the other half as recited in the will, viz: *Page 426 
"`I hereby give, devise and bequeath to that person, or those persons who shall have rendered to me the greatest service in my declining months or years, the name or names of whom shall be selected and determined by my executor hereinafter named; my intent being to reward the person or persons who care for me most when I grow helpless in my last sickness, the name or names of whom I cannot now give.'"
In his final account, the executor reported that he had selected a certain person as the one who had cared for the deceased most during her last sickness and who was therefore entitled to receive the "other half" of the estate. The probate court approved the final account, and the supervisor of the inheritance tax and escheat division appealed to this court.
We held that the bequest was too indefinite to be enforced and, for that reason, reversed the order of the probate court.
The Long case, supra, is distinguishable upon its facts from the case at bar. In that case, the testatrix made known her intention that one half of her estate should go to the person or persons who had rendered to her the greatest service in her declining months or years, especially the person or persons who cared for her most when she became helpless. Although the executor was made the arbiter to determine the fact as to who had performed the greatest service, the bequest was nevertheless from the testatrix to such person, and for the particular service. In other words, the executor had no control over the bequest other than to select the person, within a specified class, to whom it was to go. In the instant case, the executor had the absolute power of disposal of the residuary estate, without limitation. There was no person, or class of persons, to whom he was required to pay the remainder, nor was there any particular purpose for which it was to be used. He could dispose of it in any way he saw fit, even to the extent of retaining it for himself if he so desired.
The decision in the Long case, supra, could be sustained either upon the theory that a trust was thereby sought to be created but, being too indefinite as to its beneficiaries, *Page 427 
was invalid, or else upon the theory that, as to the residuary estate, the will created a special power of appointment in the executor, the terms of which were likewise too indefinite to be enforced. In any event, the rationale of the decision is that the language of the will, so far as the particular bequest was concerned, was too indefinite for enforcement.
On the other hand, the case at bar involves neither a trust nor a special power of appointment, but rather a general power of appointment, under which the executor is directed, and therefore empowered, to dispose of the balance of the estate, without limitation or restriction, and solely as his own discretion should dictate.
The decree of the trial court will be reversed, and the the cause remanded for further proceedings not inconsistent with the views herein expressed.
SIMPSON, BEALS, MALLERY, and HILL, JJ., concur.