# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 45488

THOMAS E. LANHAM,

    Plaintiff/Appellant,

v.

DOUGLAS E. FLEENOR,

    Defendant/Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

Boise, August 2018 Term

Filed: November 7, 2018

Karel A. Lehrman, Clerk

---

Appeal from the District Court of the Fourth Judicial District of the State of Idaho, Ada County. Richard D. Greenwood, District Judge.

The judgment of the district court is affirmed.

Ellis Law, PLLC, Boise, for appellant, Allen B. Ellis argued.

Carey Perkins, LLP, Boise, for respondent, Richard L. Stubbs argued.

---

STEGNER, Justice.

Thomas Lanham (Thomas) appeals from the district court's dismissal of his legal malpractice action against his former attorney, Douglas Fleenor (Fleenor). Fleenor represented Thomas in a will contest regarding the will of Gordon Lanham (Gordon), Thomas's father. After the magistrate court ruled against Thomas at the summary judgment stage, Fleenor filed an untimely appeal, which was rejected on that basis.

Because the appeal brought by Fleenor was untimely, Thomas brought a legal malpractice action against Fleenor in district court. Thomas alleged that the failure to timely appeal the magistrate's ruling proximately caused him financial loss because he had a meritorious appeal that he never got to pursue due to Fleenor's negligence.

The district court dismissed Thomas's legal malpractice claim at the summary judgment stage. The district court reasoned that a timely appeal by Fleenor would have been unsuccessful

1

on the merits; hence, Thomas did not suffer any injury as a result of Fleenor's alleged malpractice. Thomas has appealed the district court's adverse summary judgment ruling.

The crux of this appeal is the interpretation of Gordon's Last Will and Testament (Will), in which he attempted to disinherit Thomas. The validity of the Will was not contested. However, Thomas contends his father's Will did not properly dispose of all of Gordon's property because it did not contain a residuary clause. Thomas maintains these failures should have resulted in various assets passing to him through intestate succession. We affirm the district court's dismissal of Thomas's malpractice case.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts in this case are largely undisputed. On November 16, 2010, Gordon began dictating his Will via an audio recording device. Gordon recorded his Will intermittently on nine separate days, concluding on January 7, 2011. On January 19, 2011, the ten dictated paragraphs were transcribed into his written Will. On February 19, 2011, the Will was signed, witnessed, and notarized. Thomas has not contested the validity of the Will.

In his Will, Gordon explicitly limited the inheritance of Thomas and Thomas's brother Keith Lanham to one dollar and one wooden bed each. The Will mentioned two parcels of real property to which Thomas now claims an interest (collectively the subject properties). The subject properties are a ranch located at 3555 Butte Road, Emmett, Idaho (the Ranch), and a forty-seven acre parcel on Big Creek, in Valley County, Idaho (the Big Creek Property). Although Gordon stated in his Will that he planned on devising (the word Gordon used in the Will was "administering") "1/2 [of the Big Creek Property] to one person and 1/2 to another," the Will failed to bequeath the property to any specific devisee. The Will further failed to dispose of the Ranch. It also lacked a residuary clause to direct disposition of property not specifically devised.

Gordon died on December 5, 2013. The Will was filed with the magistrate court for informal probate on December 20, 2013. Judd Lanham (Judd), Gordon's cousin, was appointed personal representative of Gordon's estate, as was contemplated in Gordon's Will. On January 8, 2014, Thomas filed a *pro se* pleading entitled "Application to Attest [sic] Personal Representative For This Estate" by which he contested the validity of the Will and requested "an order determining intestacy . . . ."

2

Thomas later retained Fleenor to challenge certain portions of the Will. Fleenor filed a motion for summary judgment arguing that the Will failed to properly dispose of the residue of Gordon's estate (including the subject properties); the effect of which would mean any property not specifically devised would pass to Thomas and Keith as Gordon's intestate heirs. In response, Judd, acting on behalf of Gordon's estate, filed a cross-motion for summary judgment arguing Thomas's claim should be dismissed because Gordon's intent to disinherit his sons was clear and the Will fully and properly disposed of all of Gordon's property.

On June 10, 2014, at the hearing on the cross-motions for summary judgment, the magistrate orally ruled against Thomas from the bench. On June 20, 2014, Fleenor, on behalf of Thomas, filed a motion asking the magistrate judge to reconsider his earlier oral ruling. On June 25, 2014, the magistrate issued written findings of fact, conclusions of law, and a judgment against Thomas.[1] The magistrate's written findings did not address the previously filed motion for reconsideration.

Fleenor filed a notice of appeal to the district court on August 13, 2014, forty-nine days after the magistrate's written judgment was filed. (The time for filing an appeal is forty-two days. I.R.C.P. 83(b)(1)(A).) The district court dismissed the appeal as untimely and found that the June 20, 2014 motion to reconsider did not toll the period for appeal, because the magistrate's written decision was filed *after* the motion for reconsideration was filed. Fleenor filed a timely appeal of the district court's dismissal. However, the Court of Appeals affirmed the district court's dismissal. In doing so, that court found that Thomas's outstanding motion for reconsideration did not toll the time for filing an appeal and that the magistrate's judgment presumptively denied the outstanding motion for reconsideration. *Lanham v. Lanham*, 160 Idaho 89, 369 P.3d 307 (Ct. App. 2016).

As a result of the late filing of the appeal of the magistrate's adverse ruling, Thomas filed this legal malpractice action against Fleenor on March 17, 2016, in district court.[2] After the filing

---

[1] Even though the magistrate granted summary judgment to Judd, he issued findings of facts and conclusions of law, which were unnecessary. However, nothing of substance turns on the judge's mistake.

[2] There appears to be a factual dispute about who was responsible for the untimely appeal. Fleenor claimed that he advised Thomas of the limited time frame in which to file an appeal, but Thomas did not instruct him to file an appeal until August 13, 2014, which was after the deadline for filing had passed. In contrast, Thomas contends that "[u]pon the Magistrate's ruling, [he] instructed his attorney, defendant Douglas Fleenor, to appeal the decision." Because this case was resolved at summary judgment, the non-moving party, in this case Thomas, is entitled to all reasonable inferences. As a result, we presume, for purposes of this appeal, that Thomas instructed Fleenor to appeal the magistrate's decision prior to the expiration of the time for bringing the appeal, and that Fleenor failed to act on Thomas's instruction.

of cross-motions for summary judgment, the district court ruled that a determination of whether an underlying, unperfected appeal would have been successful, if pursued in a timely way, was a question of law for the court to decide. (An unperfected appeal giving rise to a legal malpractice suit will be referred to in this decision as a "hypothetical appeal.") The district court also determined that the record was incomplete and denied both parties' motions regarding the issue of whether the hypothetical appeal would have been successful. As a result, the parties supplemented the record and stipulated that the sole issue for the renewed summary judgment motions was whether Thomas would have prevailed on his hypothetical appeal.

The district court ruled on the renewed motions for summary judgment. In its written decision, the district court determined the Will both disinherited Thomas and unambiguously granted a general power of appointment to Judd, the personal representative of Gordon's estate. As a result, the district court found that Judd was granted the ability to distribute all property whether or not specifically bequeathed, including the subject properties. The general power of appointment therefore precluded Thomas's intestate inheritance. Given this finding, the district court determined that Thomas's untimely appeal would not have succeeded, and Fleenor's alleged malpractice could not have caused Thomas any injury. The district court then granted summary judgment to Fleenor and dismissed Thomas's case. Thomas appeals to this Court, seeking to set aside the district court's granting of summary judgment.

## II. STANDARD OF REVIEW

In a legal malpractice appeal, the standard of review for this Court when reviewing a district court's grant of summary judgment is well-settled: this Court "uses the same standard properly employed by the district court originally ruling on the motion." *Jordan v. Beeks*, 135 Idaho 586, 589, 21 P.3d 908, 911 (2001). (citation omitted). "The court must grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." I.R.C.P. 56(a). "The movant has the burden of showing that no genuine issues of material fact exist. Disputed facts and reasonable inferences are construed in favor of the nonmoving party. This Court freely reviews issues of law." *Soignier v. Fletcher*, 151 Idaho 322, 324, 256 P.3d 730, 732 (2011) (citations omitted).

"If there is no genuine issue of material fact, only a question of law remains, over which this Court exercises free review." *Kiebert v. Gross*, 144 Idaho 225, 227, 159 P.3d 862, 864 (2007). "In order to survive a motion for summary judgment, the non-moving party must 'make

4

a sufficient showing to establish the existence of an element essential to that party's case on which that party will bear the burden of proof at trial.'" *Jones v. Starnes*, 150 Idaho 257, 259–60, 245 P.3d 1009, 1011–12 (2011) (quoting *Badell v. Beeks*, 115 Idaho 101, 102, 765 P.2d 126, 127 (1988)).

### III. QUESTIONS PRESENTED ON APPEAL

1. Did the district court correctly determine that the success of a hypothetical appeal is a question of law for the court to determine?

2. Did the Will unambiguously grant a power of appointment to the executor that precluded intestate succession?

3. If Fleenor is the prevailing party, is he entitled to his attorney's fees on appeal?

### IV. ANALYSIS

Ordinarily, the elements of a legal malpractice claim against an attorney in Idaho consist of the following:

(1) the existence of an attorney-client relationship that gives rise to a duty of care on the part of the attorney to the client;[3]
(2) an act or omission by the attorney in breach of the duty of care;
(3) the breach of the duty was a proximate cause of damage to the client; and
(4) the fact and extent of the damages alleged.[4]

As in many other torts, the plaintiff bears the burden of proving each of these elements by a preponderance of the evidence. *See Bishop v. Owens*, 152 Idaho 616, 620, 272 P.3d 1247, 1251 (2012) ("Breach of an attorney's duty in negligence is a tort."); *Umphrey v. Sprinkel*, 106 Idaho 700, 706, 682 P.2d 1247, 1253 (1983).

The critical element in this case involves proximate cause. In order to establish proximate cause, the plaintiff must prove causation which, in natural or probable sequence, produced the claimed injury, loss, or damage and but for that cause, the damage would not have occurred. In addition,

---

[3] The existence of an attorney-client relationship is necessary except in very narrow circumstances. *See Harrigfeld v. Hancock*, 140 Idaho 134, 139, 90 P. 3d 884, 889 (2004)

[4] These elements are reformatted from earlier iterations. However, the elements require a duty owed by the lawyer to the client, a breach of the duty either by act or omission, proximate cause resulting from the act or omission, and damages resulting from the breach.

the client seeking recovery from his attorney is faced with the difficult task of proving two cases within a single proceeding. To hold otherwise would permit a jury to find a defendant liable on the basis of speculation and conjecture. Although the "suit within a suit" concept is not universally applicable, it applies where the alleged negligent conduct involves the failure of an attorney to properly pursue an appeal.

*Charles Reinhart Co. v. Winiemko*, 444 Mich. 579, 586–87, 513 N.W. 2d 773, 776 (Mich. 1994) (internal quotation, footnotes, and citations omitted).

### A. The success of a hypothetical appeal is a question of law for the court to decide.

Although this Court has decided many legal malpractice cases, it does not appear to have decided one in which the basis for the legal malpractice claim was an unperfected appeal. Consequently, we must decide, as a matter of first impression, if the potential success of a hypothetical appeal is an issue of fact to be decided by a jury, or rather is it a question of law for the court to decide. We conclude, as have twenty-eight other jurisdictions (twenty-seven states and the District of Columbia, 4 RONALD E. MALLEN, LEGAL MALPRACTICE § 33:118 at n.9 (2018 ed.)), that it is a question of law to be decided by the court. We do so for a number of reasons.

As noted, it is the majority rule in the United States. (It is not only the majority rule, there is only one jurisdiction that has determined the issue should be regarded as a factual issue. *Andrews v. Saylor*, 80 P.3d 482, 487 (N.M. Ct. App. 2003)). As a result, it is fair to conclude that the majority view constitutes a super majority of those jurisdictions that have decided the issue. *See* MALLEN, *supra*.

The question of whether the appeal would have succeeded is at its heart inherently a question of law. Determining that the question should be decided by a jury would require a jury to, in effect, sit as an appellate court. A judge is better trained and in a better position to make that decision than is a jury.

Some have criticized the decision to treat the question as one of law as usurping a jury's fundamental fact-finding function. However, jurors are never tasked with the responsibility of determining legal issues. That function is *always* performed by the court . *See Lubcke v. Boise City/Ada Cnty. Hous. Auth., Worrell*, 124 Idaho 450, 464, 860 P.2d 653, 667 (1993). This function, determining the applicable law, is a bedrock of judicial decision-making. As Chief Justice John Marshall wrote in the landmark decision *Marbury v. Madison,* "[i]t is emphatically

6

the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must necessarily expound and interpret that rule." 5 U.S. 137, 177 (1803).

For the reasons articulated, we conclude the trial judge correctly decided that the success or failure of the appeal is a question of law for the trial court to decide. We turn next to the question of whether the trial judge correctly determined that Thomas's appeal would have failed, as a matter of law, had it been appealed properly.

**B. The Will unambiguously granted a power of appointment; therefore, the hypothetical appeal would have been unsuccessful.**

When interpreting a will, the principal tenet is to do what the testator intended. This concept has been articulated in numerous cases over the years: "the cardinal rule of construction is to ascertain the testator's intent; and . . . [t]his intent is to be ascertained from a full view of everything within the four corners of the instrument." *Wilkins v. Wilkins*, 137 Idaho 315, 319, 48 P.3d 644, 648 (2002) (ellipsis in original) (quoting *Jones v. Broadbent*, 21 Idaho 555, 559, 123 P. 476, 477 (1912)).

With the admonition that the testator's intent be given paramount importance, we look to what Gordon put in his Will. Near the beginning of the Will, Gordon wrote: "I am going to make my friend and cousin[,] Judd Max Lanham[,] executor [of] my estate and give him Power of Attorney over all my personal and real property." On the same page, a few paragraphs later, he wrote:

> [A]nd I want to state in here that the executor of my Will is Judd Max Lanham and I am giving hi[m] a Power of Attorney for full control now and even after I am dead. I want him to be able to distribute my property and my personal effects in any way that he sees fit and I will try and put all the wording about the personal effects.

Finally, at the very end of the Will, as if to ensure his intention, he wrote:

> I want to state in here again that the executor of my Will is Judd Max Lanham and I am giving him a Power of Attorney for full control now and even after I am dead. I want him to be able to distribute my property and my personal effects as stated in my Last Will and Testament.

A fair reading of these paragraphs yields the following interpretation: Gordon intended to give his friend and cousin, Judd Max Lanham, an unfettered power of appointment[5] to distribute Gordon's real and personal property as Judd saw fit. It is also clear the power conveyed continued after Gordon's death.

Thomas challenges this interpretation of Gordon's Will. He makes the following arguments. First, he correctly argues that typically the grant of a Power of Attorney expires at the conveyor's death. He maintains that because Gordon used the phrase Power of Attorney instead of the more appropriate Power of Appointment, the grant ended upon Gordon's death. Second, he argues, again correctly, that the Will does not contain a typical residuary clause. (The failure to include a residuary clause generally results in any property not bequeathed passing intestate, or outside the Will, which would have gone to Gordon's statutory heirs.) Finally, Thomas argues Gordon expressed a desire to dispose of the real property prior to his death and because he did not do so effectively, the real property should pass through intestate succession, i.e., to Thomas.

The district court concluded that the language Gordon used in conveying a "power of attorney" was, in actuality a conveyance of a "power of *appointment*." The Idaho Probate Code recognizes the existence of powers of appointment but does not establish any prescribed language in order to grant such a power.[6]

Fleenor argues that no specific language is required to create a power of appointment. Multiple jurisdictions follow this rule.[7] The Restatement (Third) of Property is also instructive. It

---

[5] Gordon used the words "Power of Attorney" rather than "Power of Appointment." For reasons explained later in this opinion, it appears that Gordon intended to give Judd unfettered control to distribute the estate in any way Judd saw fit. Consequently, the words "Power of Appointment" more accurately reflect Gordon's intention.

[6] The Probate Code defines "Presently exercisable general power of appointment" as follows:

> "Presently exercisable general power of appointment" with respect to the property or property interest subject to the power means that the power is exercisable at the time in question to vest absolute ownership in the principal individually, the principal's estate, the principal's creditors, or the creditors of the principal's estate. The term includes a power of appointment that is not exercisable until the occurrence of a specified event, the satisfaction of an ascertainable standard, or the passage of a specified period only after the occurrence of the specified event, the satisfaction of the ascertainable standard, or the passage of the specified period. The term does not include a power exercisable in a fiduciary capacity or only by will.

I.C. § 15-12-102(8).

[7] *E.g., In re Estate of Lewis*, 738 P.2d 617, 619 (Utah 1987) ("[N]o particular words are necessary to create a power of appointment . . . ."); *Estate of Rosecrans*, 4 Cal. 3d 34, 38, 480 P.2d 296, 298 (1971) ("[N]o particular form of words is necessary to create a power of appointment."); *In re Rowlands' Estate*, 73 Ariz. 337, 341, 241 P.2d 781, 784 (1952) ("No special words are needed to create a power of appointment."); *In re Lidston's Estate*, 32 Wash. 2d 408, 420, 202 P.2d 259, 266 (1949) ("No technical, special, or particular form of words [are] necessary for the creation of a power of appointment; if the testator's intention to confer the power appears from the entire will, full

states: "the manifestation of intent necessary to create a power of appointment does not require the use of particular words or phrases. Any words or phrases are sufficient to create a power of appointment if they establish that the transferor so intended." Restatement (Third) of Property (Wills & Don. Trans.) § 18.1 cmt. b (2011).

This position finds additional support in the Idaho Code through analogy. When the Probate Code defines "power of attorney," the definition recognizes that no specific words are required to grant the power. I.C. § 15-12-102(7) ("'Power of attorney' means a writing or other record which grants authority to an agent to act in the place of the principal, whether or not the term power of attorney is used.").

Applying the same rule for the phrase "power of appointment" promotes the underlying purpose of the Probate Code—"to discover and make effective the intent of a decedent in distribution of his property." I.C. § 15-1-102(b)(2). Likewise, such a rule conforms to the fundamental tenet of interpreting wills: that the testator's intent should "control[ ] the legal effect of his dispositions." I.C. § 15-2-603. Conversely, requiring the use of specific words to grant a power of appointment increases the likelihood of frustrating a testator's intent, especially in a case where, as here, the will was written without the assistance of an attorney.

For these reasons, we conclude that "[n]o technical, special, or particular form of words [are] necessary for the creation of a power of appointment; if the testator's intention to confer the power appears from the entire will, full effect will be given to such intention."[8] *In re Lidston's Estate*, 202 P.2d 259, 266 (Wash. 1949).

Due to the extensive rights conveyed in the granting of a power of appointment, courts have been hesitant to imply such powers. *See, e.g.*, *In re Estate of Lewis*, 738 P.2d, 617, 619–20 (Utah 1987). For this reason, we adopt the three-part test set out in the case *In re Estate of Krokowsky* 896 P.2d 247 (Ariz. 1995) as setting forth what must be proven to conclude the testator intended to convey a power of appointment. The *Krokowsky* test requires: "[i]n order to

---

effect will be given to such intention."). *But cf. Holzbach v. United Virginia Bank*, 216 Va. 482, 484, 219 S.E.2d 868, 870 (1975) ("A power of appointment is a unique legal creature. It is created, never by implication or by operation of law, but only by deliberate act."); *McCuddy v. Citizens Fid. Bank & Tr. Co.*, 505 S.W.2d 766, 767 (Ky. 1974) ("[T]o create a power of appointment words clearly indicating that intent must be used, and a power is not created unless the intention to do so is expressed or clearly implied. A power is not to be inferred except from clear and unequivocal language." (citation omitted)).

[8] The language from the Restatement (Third) of Property is also helpful: "[a]ny words or phrases are sufficient to create a power of appointment if they establish that the transferor so intended." Restatement (Third) of Property (Wills & Don. Trans.) § 18.1 cmt. b (2011).

grant such an extraordinary power, the law requires that the grantor must (1) intend to create a power, (2) indicate by whom the power is held, and (3) specify the property over which the power is to be exercised." *Id.* at 250; *see also In re Estate of Lewis*, 738 P.2d at 619. This test conforms to the abiding principle that the intent of the testator should be ascertained and given effect. *See* I.C. § 15-2-603. It also provides appropriate balance by requiring the testator to manifest his intentions in multiple ways.

When read as a whole, Gordon's Will satisfies the three elements of the *Krokowsky* test and grants Judd a general power of appointment. Although the court in *Krokowsky* did not find the will granted a general power of appointment, a comparison to that case is helpful.

In *Krokowsky*, a woman died with a handwritten will that attempted to disinherit her only remaining heirs. *In re Estate of Krokowsky*, 896 P.2d at 248–49. The heirs contended that because the will lacked a residuary clause and did not grant a power of appointment, the entire estate (except for the specific bequests) should pass to them by intestate succession. *Id.* at 249. The validity of the will was not contested. *Id.* at 278, 896 P.2d at 248.

In opposition to the intestate heirs, a friend of the decedent, Mary, argued that the will granted her a general power of appointment because it stated the following: "I hereby appoint Mary . . . to act with power of attorney for me. With her wisdom she will carry out my wishes." *Id.* at 279, 896 P.2d at 249. Originally, the Arizona Court of Appeals in its decision found that the phrase "power of attorney" was a lay person's attempt to create a general power of appointment. *In re Estate of Krokowsky*, 180 Ariz. 190, 194, 883 P.2d 427, 431 (Ct. App. 1993), *vacated,* 182 Ariz. 277, 896 P.2d 247 (1995). However, using the test announced above, the Arizona Supreme Court found that the will failed to establish the first and third components: the testator's intent to create the general power and to specify the property subject to the general power. *In re Estate of Krokowsky*, 182 Ariz. at 280, 896 P.2d at 250. Unlike *Krokowsky*, the Will in this case satisfies all three elements.

Regarding the first element, the court in *Krokowsky* stated the following rule: "[t]o create a power of appointment, the grantor must use words that plainly express or clearly imply his intent to create such a power. [A court] cannot infer a power of appointment unless there is a clear and unequivocal indication that the grantor intended to create one." *Id.* (citing *In re Estate of Lewis*, 738 P.2d 617, 620 (Utah 1987)).

10

The court then listed a number of cases in which powers of appointment were found and the language used to do so:

> Applying this rule, courts have upheld a power of appointment where the testator's words clearly authorize another person to dispose of specifically identified property. In *In re Rowlands' Estate,* this court held that the testator granted a power of appointment by writing, "All things not mentioned in my Will I leave up to Mr. and Mrs. Hugh Cuthbert, Sr. to distribute to any of my close friends. . . . If I have not mentioned anything I ought to have mentioned I leave it to your judgments Mr. and Mrs. Hugh Cuthbert Senior." 73 Ariz. at 339, 241 P.2d at 783; *see also In re Kuttler's Estate,* 160 Cal.App.2d 332, 325 P.2d 624, 626 (1958) ("Notify Earl Hayter or my sister Bertha McQuarrie . . . for them to dispose of my belongings as they see fit."); *In re Estate of Stewart,* 325 Pa.Super. 545, 473 A.2d 572, 573 ("Mrs. Hibbert . . . can handle my estate as she sees fit."), *aff'd,* 506 Pa. 336, 485 A.2d 391 (1984); *In re Lidston's Estate,* 32 Wash.2d 408, 202 P.2d 259, 261–62 (1949) ("I further direct my Executor dispose of any balance after the aforementioned gifts have been paid according to his wise discretion.").

*Id.* at 280–81, 896 P.2d at 250–51. The court in *Krokowsky* found that the will did not express or imply "an intent to authorize someone else to dispose of her property." *Id.* at 281, 896 P.2d at 251. Instead, the will instructed Mary to act on behalf of the decedent in a fiduciary capacity, as it lacked any language allowing Mary "to dispose of any property 'as she s[aw] fit.'" *Id.* The court further supported this finding by the treatment of Mary elsewhere in the will, as it too directed Mary to act as a fiduciary. *Id.* at 281–82, 896 P.2d at 251–52.

The court in *Krokowsky* also doubted that the brief language in the will could simultaneously make Mary both the personal representative and grant her a general power of appointment. *Id.* Given the foregoing reasons, the court overruled the lower court's determination that the phrase "power of attorney" was a lay person's attempt to create a general power of appointment. *See id.* at 280, 896 P.2d at 250; *In re Estate of Krokowsky*, 180 Ariz. at 194, 883 P.2d at 431 (Ct. App. 1993).

Although the underlying facts in *Krokowsky* are similar to this case, a serious divergence exists in the language found in the respective wills. In this case, Gordon's Will uses language similar to the language cited in *Krokowsky* that was recognized as being sufficient to grant a power of appointment. Relevant portions of the Will in this case read as follows:

> [¶2] November 18, Thursday, 2010: I had a wife and two sons and grandsons and a couple of great grandsons and great granddaughters and I want to make this clear what I am going to do for my estate. *I am going to make my friend*

11

*and cousin Judd Max Lanham executor to my estate and give him Power of Attorney over all my personal and real property. . . .*

. . . .

[¶4] This is another day . . . it is November 19th and I want to state in here that *the executor of my Will is Judd Max Lanham and I am giving hi[m] a Power of Attorney for full control now and even after I am dead. I want him to be able to distribute my property and my personal effects in any way that he sees fit* and I will try and put all the wording about the personal effects. I also have a 47-acre of [sic] property in Big Creek Idaho, Valley county [sic] and *I will try to describe about how I want that administered*, etc. I am gonna stop now.

. . . .

[¶8] . . . Anyway, there is also some sand painting that belongs to Lizzy and I gotta $3,000 sheep head that Judd can hang up in his cabin if he wants to. And, there is all kinds of stuff that I'll discuss with him. But anyway, there is all kinds of stuff in my safe that will be *his to disperse of how ever he wants*. . . .

[¶11] I want to state in here again that *the executor of my Will is Judd Max Lanham and I am giving him a Power of Attorney for full control now and even after I am dead. I want him to be able to distribute my property and my personal effects as stated in my last Will and Testament.* [signed Gordon Thomas Lanham]

(Italics added.) (The final quoted paragraph was not dictated by Gordon, but transcribed as part of the Will.) When reading the Will as a whole, it is apparent that Gordon's intent was to grant a general power of appointment to Judd over all property not specifically devised.

First, Gordon included the language specifically noted by the court in *Krokowsky* commonly found evidencing the intent to grant a power of appointment: "I want [Judd] *to be able to distribute my property and my personal effects in any way that he sees fit* . . . ." This language clearly, unequivocally, and unambiguously illustrates Gordon's "intent to authorize someone else to [distribute or] dispose of [his] property." *In re Estate of Krokowsky*, 182 Ariz. at 281, 896 P.2d at 251. Moreover, this language is an express creation of a general power. *See In re Lidston's Estate*, 32 Wash. 2d at 421, 202 P.2d at 266. Later in the Will, Gordon recognized Judd's power of appointment when he stated "there is [sic] all kinds of stuff in my safe that will be *his to disperse of how ever he wants*."[9]

At first glance, this language may appear to be at odds with Gordon's intent that Judd "distribute my property and my personal effects as stated in my last Will and Testament," found at the end of the Will. However, this later language merely confirms the scope of the power,

---

[9] This language also demonstrates the *general* nature of the power. Here, Gordon stated that the property subject to the power is "his," or Judd's, which demonstrates that Judd could exercise the power even to his own benefit.

12

limiting it to property not specifically devised in the Will. This is not unusual. *See In re Lidston's Estate*, 32 Wash. 2d at 421, 202 P.2d at 266 ("[T]hat language, in its context, is consistent only with an intention to create, and an express creation of, a general power of appointment, authorizing and empowering the executor to dispose of any balance remaining in the estate . . . ."); Restatement (Second) of Property, Don. Trans. § 12.2 cmt. c (1986) ("The scope of a power can be limited in many different ways by the donor's manifestation of intent."). Therefore, the language in the eleventh paragraph limiting the property subject to the power does not contravene the creation of the general power. *See Matter of Estate of Howard*, 112 Idaho 306, 309, 732 P.2d 275, 278 (1987) ("It is axiomatic that one provision of a will cannot be construed such that another section is violated since that would be contrary to the cardinal rule that the Court must give effect to the express intention of the testator where possible and lawful."). In effect, this limitation leaves the residue of Gordon's estate to be distributed by Judd through a general power of appointment.

The district court found that the language in the Will granting Judd a "Power of Attorney" was "simply a layman's miscues [sic] of a legal term of art" in an attempt to grant a general power of appointment. While this conclusion is similar to that found to be ineffective in *Krokowsky*, Gordon went much further in his grant of power to his executor than the testatrix in *Krokowsky*. Paragraph four of Gordon's Will unambiguously grants a general power of appointment. Gordon's use of the phrase "Power of Attorney" with the accompanying language "even after I am dead" buttresses the conclusion that Gordon intended to grant Judd a power of appointment. The district court correctly focused on this latter language. While the district judge wrote that the language granting "full control 'even after I am dead'" was sufficient to determine Gordon's intent to grant a general power, Gordon went even further and wrote "I want [Judd] to be able to distribute my property and my personal effects in any way that he sees fit . . . ."

Unlike the narrow and limited language of the will in *Krokowsky,* the language "giving [Judd] a Power of Attorney for full control now *and even after I am dead*" illustrates the intent to grant more than a simple power of attorney. Thomas correctly argues that a power of attorney terminates upon the death of the grantor of the power. I.C. § 15-12-110(1)(a). However, using the language "even after I am dead" demonstrated that Gordon did not intend to grant a power of attorney that would expire upon his death. Instead, this language was designed to confer upon

Judd the ability to distribute property after Gordon's death, which is usually done through a power of appointment.

The second element of the *Krokowsky* test, the clear statement of the person to whom the power is granted, does not appear in doubt. Gordon clearly and repeatedly identified Judd Max Lanham as the person who was to have the power to distribute Gordon's real and personal property.

The third component of the *Krokowsky* test, that the will must specify what property is subject to the power of appointment, has also been met. The language immediately following the creation of the general power ("I want [Judd] to be able to distribute my property and my personal effects in any way that he sees fit") illustrates Gordon's intent. The subsequent language reads: "I will *try* and put all the wording about the personal effects. I also have a 47-acre of [sic] property in Big Creek Idaho, Valley county [sic] and I will *try* to describe about how I want that administered, etc." (Italics added). This language reveals the scope of the property subject to the power: all property that Gordon failed to bequeath through his Will—i.e., the residue of Gordon's estate. The scope of the power is then confirmed by paragraph eleven when Gordon directs Judd to "distribute my property and my personal effects as stated in my last Will and Testament."

Moreover, this tentative "try" language in the Will demonstrates that Gordon knew he might not dispose of all his property through his Will. Consequently, such language supports the conclusion that Gordon wanted Judd to be able to distribute any property he, Gordon, failed to address in his Will. Although Gordon may have wanted "to administer [sic] ½ [of the Big Creek Property] to one person and ½ to another," he recognized that it might not occur and provided Judd the power to distribute the Big Creek Property "in any way that he sees fit," in that event.

In reviewing the tripartite test set out in *Krokowsky* each component has been met. Gordon intended to create an unfettered power allowing Judd to distribute his estate "in any way he sees fit"; he granted the authority to his "friend and cousin" Judd Lanham; and he specified the property over which the power existed: "all my personal and real property" not bequeathed in the Will.

The fact that Gordon also clearly and unequivocally disinherited Thomas in the Will supports the conclusion that Gordon intended to convey a general power of appointment to Judd and that he did not want the residue go to Thomas. As Gordon wrote in his Will:

14

Thanksgiving is over and I just wanted to add to this program that my son, Thomas Everett Lanham, 48 years old, has already been given all he needs to have and that I am going to leave $1 more dollar [sic] against whatever is legal to him and then he is going to be on his own.

Giving Gordon's Will the technical interpretation Thomas suggests would only frustrate Gordon's intent.

### C.  No attorney's fees will be awarded on appeal.

Fleenor requests attorney's fees on appeal pursuant to Idaho Code Section 12-121 and Idaho Appellate Rules 40 and 41. Fleenor argues that he should be awarded attorney's fees because Thomas "does not advocate [for the adoption of] new law," and because Thomas "advocates a position that is contrary to long established law . . . ."

This Court may award attorney's fees on appeal pursuant to Idaho Code Section 12-121 only when it "finds that the case was brought, pursued or defended frivolously, unreasonably or without foundation."

> Where an appeal turns on questions of law, [as it does here], an award of attorney fees under this section is proper if the law is well-settled and the appellant has made no substantial showing that the district court misapplied the law. When an appeal simply disputes the trial court's factual findings, which are supported by substantial although conflicting evidence, the appeal is considered frivolous and an award of attorney fees is proper under I.C. § 12-121. "[A]n award under I.C. § 12-121 is appropriate where an appeal presents no meaningful issue on a question of law but simply invites the appellate court to second-guess the trial judge on conflicting evidence."

*Elec. Wholesale Supply Co. v. Nielson*, 136 Idaho 814, 828, 41 P.3d 242, 256 (2001) (citations omitted).

In this case, Thomas is not asking this Court to second-guess evidence or findings of fact. The core issue turns on an unsettled question of law. The issue before this Court is a matter of first impression. The Will did not include the phrase "power of appointment." It was therefore reasonable for Thomas to appeal in order to have an unsettled question of law answered. Consequently, Fleenor's request for attorney's fees is denied.

### V. CONCLUSION

The judgment of the district court is affirmed. We award Fleenor costs, but not attorney's fees, on appeal.

Chief Justice BURDICK, Justices HORTON, BRODY and BEVAN, CONCUR.